In the Matter of the Application of HARRISON-WARREN REALTY Co., INC., for a Peremptory Mandamus Order against JAMES B. SPENCER, Commissioner of Public Safety of the City of Syracuse.

Supreme Court, Onondaga County, April 13, 1925.

**Municipal corporations — ordinances — peremptory mandamus directing issuance of permits by commissioner of public safety of city of Syracuse for erection of gasoline station and for sale and distribution of gasoline at said station — commissioner must issue permit under Laws of 1905, chap. 685, §§ 22, 24 and 25, and Second Class Cities Law, §§ 130, 131 and 156, if proposed structure complies with building code of said city — petitioner entitled to permit for erection of station — commissioner required by Laws of 1905, chap. 685, § 17, to prescribe rules and regulations covering storage and sale of explosives — commissioner failed to prescribe said regulations — discretion of commissioner in refusing to grant permit limited to failure of application to comply with said regulations — mandamus order granted.**

The commissioner of public safety of the city of Syracuse, pursuant to sections 22, 24 and 25 of chapter 685 of the Laws of 1905, and sections 130, 131 and 156 of the Second Class Cities Law, is required to issue a building permit for the erection of a proposed structure within said city, if it appears that the application therefor conforms with the statutes, ordinances, building and sanitary codes of the city. No discretion is vested in the commissioner to refuse to issue a permit in the absence of facts indicating that the proposed structure does not comply with the regulations applicable thereto.

Section 17 of chapter 685 of the Laws of 1905 directs the commissioner of public safety to prescribe rules and regulations governing the storage and sale of explosives within the city and the only discretion vested in the commissioner to refuse a permit to store and sell explosives is when the application is contrary to some regulation adopted and promulgated by him.

Accordingly, petitioner's application for a peremptory mandamus order directing the issuance of permits for the erection of a gasoline station and to sell and distribute gasoline at said station within the city of Syracuse should be granted where there is no suggestion that the proposed structure does not comply with the statutes, ordinances, building and sanitary codes of the city. Moreover, the permits should be granted where the commissioner of public safety has not acted under the power conferred upon him in prescribing and promulgating rules and regulations required by section 17 of chapter 685 of the Laws of 1905 to govern the storage and sale of explosives, and the commissioner in refusing to grant petitioner's permit is assuming to deny the application therefor, in the exercise of an uncontrolled discretion.

MOTION for peremptory mandamus order.

*Dixson, Searle & Jeffrey,* for the petitioner.

*Frank J. Cregg, Corporation Counsel,* and *H. E. Wilson,* for the respondent.

784   MATTER OF HARRISON-WARREN REALTY CO., INC., *v.* SPENCER.

Supreme Court, April, 1925.                    [Vol. 124

CHENEY, J.:

This is an application for a peremptory mandamus order directing the commissioner of public safety of the city of Syracuse to approve the application of petitioner for the erection of a gasoline and oil filling station on the property described therein.

The petitioner is the owner in fee of the property situate on the southwest corner of West Adams and South Salina streets in the city of Syracuse, and desires to erect thereon a gas filling station, all of the buildings and appurtenances of which will be located upon its own private property, and in the proposed operation of which no portion of the public streets of the city will be used except as the customers of the business to be conducted will probably drive automobiles and other vehicles off from the public streets to be served.

The petition states that petitioner made application to the superintendent of buildings of the city of Syracuse for a permit to erect a gasoline and oil filling station on said property, tendered the fees required to be paid upon such application, together with the plans of said building and storage tanks, complied with the rules and regulations adopted and followed by the commissioner of public safety of the city of Syracuse and by the New York Fire Insurance Rating organization for all gasoline and oil filling stations in the city of Syracuse. There is attached to and by reference made a part of the petition a copy of the application made, and it appears to be merely an application for a gasoline license.

However, the opposing affidavits read upon the motion do not put in issue that allegation in the petition, but base the opposition to the motion upon the sole ground that the commissioner of public safety is "vested with the authority in his discretion of granting permission for the erection and maintenance of stations with pumps and tanks for the sale of gasoline for the use of automobiles, and that in the exercise of his discretion" so vested in him by law he did "deny the application of the petitioner to construct a drive-in gasoline station at the premises described in the petition." Consequently I shall treat this application as if the petition contained the appropriate allegation of fact showing the performance by the petitioner of all the necessary precedent procedural acts required by the general law and the ordinances of the city of Syracuse to entitle it to permits to erect a gasoline station and to sell and distribute gasoline at such station, both of which permits seem to be required in order that petitioner may legally carry on such business.

By the Second Class Cities Law (§§ 130, 131, 156) and by chapter 685 of the Laws of 1905, supplementary thereto, the general subject

of the erection of buildings and the keeping, distribution and sale of gasoline and other inflammable and explosive materials in the city of Syracuse is committed to the direction of the department of public safety, with the commissioner of public safety as its administrative head. Under him is the superintendent of buildings, who has general charge of the building department, a bureau in the department of public safety. The law further gives power to the common council to establish by ordinance a " building code " providing for all matters concerning, affecting or relating to the construction, alteration, repair or removal of buildings and structures. (Second Class Cities Law, § 156; Laws of 1905, chap. 685, § 22.) Pursuant to the authority so conferred, the common council has adopted a building code, wherein is laid down with minute particularity the structural requirements of buildings to be erected in the city. The law further provides that no work of erecting or constructing any building or structure shall be commenced until a permit is granted by said superintendent; that no permit shall be granted by the superintendent unless the application, the contents of which are also minutely detailed, shall conform strictly with the requirements of the act and any laws in any manner relating thereto and with the provisions of the building code and sanitary code of said city, and that the superintendent shall approve or reject any application made to him within a reasonable time. (Laws of 1905, chap. 685, §§ 24, 25.)

The reasonable interpretation of all these statutes and ordinances is that when there is presented to the superintendent of buildings an application for a building permit in the prescribed form, from which it appears that the proposed structure conforms in all respects with the statutes, ordinances and building and sanitary codes, it is the duty of the superintendent to issue a permit, and that no discretion is vested in him to refuse a permit for any other reason.

The conclusion follows that the petitioner is entitled to a permit for the erection of its proposed building, as no suggestion is made that the proposed structure does not comply with all of those regulations. The ends of the petitioner will not be met by the issuance of the permit and the erection of the building, unless he is to be permitted to carry on therein the business of keeping thereon and selling to the public gasoline and oil, which are explosive and inflammable materials.

As a general rule, the owners of city lots may keep them and use them as they desire, without interference from the municipality. (*Mayor, etc., of Hudson* v. *Thorne,* 7 Paige, 261.) The right to apply the property to any use desired is not absolute, especially in crowded

municipalities, and it is well settled that it is a lawful exercise of the police power to regulate or even prohibit the carrying on of certain kinds of business when necessary for the peace and safety or the health of the community. (*People ex rel. Lieberman* v. *Vandecarr,* 175 N. Y. 440; affd., 199 U. S. 552; *People ex rel. Lodes* v. *Dept. of Health,* 189 N. Y. 187; *Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 id. 313.) That the business of keeping and selling such explosives as gasoline and oil may be so regulated has been expressly held. (*Matter of McIntosh* v. *Johnson,* 211 N. Y. 265; *Matter of Stubbe* v. *Adamson,* 220 id. 459.)

Certain statutes have been passed by the Legislature and ordinances enacted by the common council of the city of Syracuse, affecting the right to keep and sell explosives in that city. The statute regulating the department of public safety in the city of Syracuse (Laws of 1905, chap. 685, § 17) provides as follows: " It shall be the duty of the commissioner of public safety to formulate, adopt, promulgate and enforce complete regulations governing the manufacture, sale and use of explosive, combustible and inflammable materials and substances, and may from time to time alter and amend the same. No person shall manufacture, compound, transport, store, sell or offer or keep for sale or use, have or keep for use within said city any dangerous, explosive, combustible or inflammable compound, mixture, material or substance of any name or nature whatsoever except in accordance with such regulations governing and restricting the same, and under a permit issued by said commissioner of public safety therefor, whenever said regulations shall require the same."

It is not claimed by the respondent that the commissioner of public safety has ever formulated, adopted or promulgated any regulations governing the manufacture, sale or use of explosives by virtue of the power for that purpose delegated to him by that statute.

However, the common council of the city, under its general legislative powers contained in the Second Class Cities Law (§ 30) has passed an ordinance (General Ordinances, § 7) reading as follows: " No person shall sell at retail any kerosene or other products of petroleum or any of the fluids or oils mentioned in section three of this chapter to be used for heating or illuminating or other purposes without first obtaining a permit so to do from the commissioner of public safety, which permit shall be for one year, and shall not be transferable without the approval of the commissioner of public safety. Such permit shall be posted in a conspicuous place in the store or place of business of the person or persons to whom the same is issued and may be revoked for cause by said commissioner."

Paragraph 66 of section 37 of the building code, which is also an ordinance adopted by the common council, provides: " No residence building nor any part thereof, nor of the lot upon which it is situated shall be used as a place of storage, keeping or handling of any article dangerous or detrimental to life or health; nor of any combustible article except under such conditions as may be prescribed by the commissioner of public safety under authority of a written permit issued by him, or any ordinance of the common council."

It thus appears that the law provides that petitioner cannot carry on the business which it desires to engage in without a permit from the commissioner of public safety. The commissioner has denied such a permit, as he expresses it, " in his discretion." The question to be determined is whether he can be compelled to issue such a permit.

The power to prohibit a certain line of conduct is a legislative power, and ordinarily should be exercised by the legislative branch of the government. (N. Y. Const., art. 3, § 1.) To a limited extent this power can be delegated and it is clear that the " authority to determine what ought to be done to protect the public welfare in particular cases as necessity requires, may properly be reposed in public boards and officers." (*People* v. *Kaye,* 212 N. Y. 407.) While this delegation of power to the commissioner of public safety must be held to be within the power of the Legislature to enact, we must look to the acts themselves to determine the extent of the power which the commissioner may exercise. Ordinarily the right to grant or withhold a permit carries with it the exercise of discretion in the discharge of that public duty. (*People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96; *People ex rel. Cumisky* v. *Wurster,* 14 App. Div. 556; *People ex rel. Worth* v. *Grant,* 58 Hun, 455.) But the fact that a permit is required is not alone determinative of the question whether it may be withheld. (*People ex rel. Osterhout* v. *Perry,* 13 Barb. 206; *Matter of O'Rourke,* 9 Misc. 564.)

It is evident that the intent of the Legislature was not to confer upon the commissioner of public safety the power to pass upon each application for a permit to store and sell explosives, and to either approve or reject the application according to his judgment in the individual case as to whether it comports with the public welfare; but the whole subject of the manufacture, storage and sale of explosives was remitted to the commissioner, and it was made his duty to prescribe rules and regulations which would state when, where and how the business could be carried on, and what measures for the protection of the public safety must be observed by those desirous of going into and carrying on the business. The requirement for the permit was but merely inci-

Supreme Court, April, 1925.     [Vol. 124

dental, for the purpose of enabling the commissioner to know that the regulations were being observed. If the application for the permit showed that the applicant had complied with all the conditions contained in the rules and regulations, the permit would follow as a matter of course. If during the term of the permit the applicant should violate any of the rules applicable to the method of carrying on the business, the same might be revoked.

The foregoing is a reasonable interpretation of the statute and one which will effectuate the purpose for which it was passed, and which forms its only justification, the peace and safety of the people generally. I am of the opinion that the only discretion vested in the commissioner to refuse a permit is when the application is contrary to some regulation adopted and promulgated by him. In such case he may legally refuse a permit. (*City of Rochester* v. *West*, 164 N. Y. 510.)

The difficulty with the situation with respect to the present application is that it does not appear that the commissioner has acted under the power conferred upon him in adopting and promulgating rules and regulations to govern this business, but is assuming to deny the application for the permit in the exercise of an uncontrolled discretion.

The motion for a peremptory mandamus order is granted, with costs.