75 N.J. Super. 438 (1962)
183 A.2d 444
BURNETT GRIGGS, PLAINTIFF-RESPONDENT,
v.
ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF PRINCETON, NEW JERSEY, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1962.
Decided July 11, 1962.
*440 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. William R. Blair, Jr., argued the cause for appellant (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. Fred G. Stickel, III, argued the cause for respondent (Mr. David Deitz, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a Law Division judgment reversing the board's denial of a "special exception" to the Princeton zoning ordinance, which would permit plaintiff to construct a gasoline station in an area zoned as a business B1 district.
The pertinent sections of the zoning ordinance follow:

"Section 9.

Business B1 Districts
Prohibited Uses: The following uses of buildings and of land shall be prohibited in Business B1 Districts:
(9) Public garages, gas-filling stations and used car lots, except when approved by the Board of Adjustment in accordance with the provisions of Section 12(D). * * *"

"Section 12.

Exceptions and Special Provisions

* * * * * * * *

(D) Public Garages, Gas-Filling Stations and Used Car Lots:

(1) The Board of Adjustment may after public notice and hearing, and subject to appropriate conditions and safeguards for safety and protection of health and the general welfare, permit without time limitation or for a stated term of years, in a Business B1 District or in a Business B2 District subject to the provisions of this subsection (D), a public garage, a gas-filling station or a used car lot. * * *"
*441 The plaintiff's property is located at the corner of Hulfish and Witherspoon Streets, about 100 feet from Palmer Square, the business center of Princeton. It measures approximately 10,000 square feet and has a frontage on the two streets totalling about 186 feet. A tavern is located directly to the north of the property, and directly to the west there is a municipal parking lot. To the south, across Hulfish Street, is located another gasoline station, and to the west, across Witherspoon Street, another municipal parking lot. Presently there are several buildings on plaintiff's lot, consisting of a two-story restaurant, a small garage, a fish store and his two and one-half story residence. At an earlier time the borough unsuccessfully attempted to classify the area in which the property is located as a "blighted area." See Griggs v. Princeton Borough, 33 N.J. 207 (1960).
Plaintiff applied to the building inspector for a special exception pursuant to section 12(D) above. The application was denied. He then appealed to the zoning board of adjustment, which held a hearing on October 27, 1960, upon notice to all landowners within 200 feet.
The evidence therein disclosed that the gasoline station in contemplation would be in conformity with the colonial type architecture of Palmer Square. In describing his plans, Richard Charlton, plaintiff's architect, testified that the station would be fire resistant, and he expressed the opinion that the removal of the existing structures and the installation of the station would provide a clear and unobstructed view around the corner of Hulfish and Witherspoon Streets thereby increasing traffic safety at the intersection. Charles Draine, an insurance broker, estimated upon the basis of the plans submitted and the testimony of the architect concerning the fire resistant construction, that the station would be in the high 20% of commercial risks and would not effect an increase in the fire insurance premiums paid by adjoining owners. Nelson W. Thompson, manager of the Nassau Oil Company, which proposed to *442 lease the station from plaintiff, testified that he had examined the files of the borough's engineering department relating to traffic accidents and had found that in the years 1956-1958, inclusive, 200 traffic accidents were reported to have occurred on Nassau Street, the main street of the borough; further, that of these, only five involved vehicles entering or leaving gasoline stations. Edmund D. Cook, a real estate expert, expressed the view that the proposed service station would be one of the "highest possible uses" to which the property could be put and would be an asset to the community. He testified, also, that there are no schools, churches or public gathering places nearby to which pedestrians might go, and that to his knowledge he had never seen a school child cross at this intersection. Plaintiff also submitted a petition signed by 110 of his neighbors approving the proposed station.
No objection to the requested exception, testimonial or otherwise, was made by anybody.
The board considered the matter in executive session and then voted two to grant, and two to deny the application, one member abstaining because he was the owner of property within 200 feet of the subject premises. This action necessitated denial of the application for the dual reasons that the zoning ordinance of the borough specifically requires the concurring votes of three members of the board to reverse the order of the building inspector, and that even in the absence of such a provision a tie vote is regarded as a "statutory denial." Miller v. Boonton Tp. Bd. of Adjustment, 67 N.J. Super. 460, 470 (App. Div. 1961), R.S. 40:55-41.
The reasons for denying the exception, as recited by one member of the board and adopted by another, may be summarized as follows: (1) Plaintiff did not show undue hardship concerning the requested variances required in addition to the special permit (these variances related to plaintiff's application for permission to include living quarters in the station, a proposal which he abandoned at the *443 hearing). (2) The proposed service station would be located at a busy intersection and cars cutting across traffic to enter and leave the station would "create a dangerous situation" and "disrupt the orderly flow of traffic." (3) Cars entering and leaving the station would cut across sidewalks and endanger pedestrians who are attracted to the area. (4) Although a special permit for a gas station is authorized by section 12(D), the board has the power to require special conditions and safeguards for the safety and protection of health and the general welfare. The traffic flow and the sidewalk crossing problems create a situation where no adequate safeguards or conditions can be laid down for safety, etc. (5) There is no local need for the station, as there is another service station across the street operating as a nonconforming use.
The trial court found that there was nothing in the record to support the board's finding that a "dangerous situation" would be created by the granting of the permit, and concluded that "no determination can be permitted to rest upon undisclosed findings outside of the record." The trial judge also noted that expert witnesses for plaintiff substantiated all of plaintiff's claims, no witnesses appeared to oppose the application, and that he had taken into consideration "the several petitions" (of plaintiff's 110 neighbors) that were filed indicating no objection to the erection of the service station. The judge summarized his findings:
"In the instant case, it is the opinion of this court that the conclusions of the Board, as they relate to the erection of a gas station, were not supported by the evidence adduced before it. Furthermore, there appears to be no reasonable relationship between the restricted use and the public welfare. * * *"
The general rule enunciated by our courts is that the decision of a local board of adjustment is presumptively correct and should not be set aside unless shown to be arbitrary, capricious or patently unreasonable. Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 105 *444 (1957). See also Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 423 (1952), in which the court said:
"The rationale of the statutory scheme is that the board of adjustment shall supply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function."
Incidentally, the presumption of validity is given the same legal effect by the reviewing court whether the decision is by a majority of the board members or is the result of a statutory denial. Miller v. Boonton Tp. Bd. of Adjustment, supra.
However, these rules and others which similarly lay emphasis on the broad discretion conferred on a board of adjustment by statutory authority, must be considered in the context of the individual problems which confront the board when it is called upon to act. Of prime importance in the present case is the fact that the board here was dealing with a "special exception" as contrasted with a "variance." Variances are to be distinguished from special uses, or permits for special uses, under zoning ordinances in that variances relate to unnecessary hardship while "special uses" relate to those authorized on a different basis, e.g., substantial public service and convenience from the use and absence of danger or annoyance to nearby property owners or residents. 8 McQuillin, Municipal Corporations, § 25.160, p. 374 (1957).
The subject of special uses was treated in detail by the court in Tullo v. Millburn Tp., 54 N.J. Super. 483, 490-491 (App. Div. 1959); and see LaRue v. East Brunswick, 68 N.J. Super. 435, 455 (App. Div. 1961). In Tullo, the following was noted:
*445 "* * * The term [`special exception'] might well be said to be a misnomer. `Special uses' or `special use permits' would be more accurate. * * * If the board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose by reason of the nature, location and incidents of the particular use. * * * This method of zoning treatment is also frequently extended to certain unusual kinds of strictly private business or activity which, though desirable and compatible, may by their nature present peculiar zoning problems or have unduly unfavorable effect on their neighbors if not specially regulated. Gasoline stations * * * are an example of this * * * category. The point is that such special uses are permissive in the particular zone under the ordinance and neither nonconforming nor akin to a variance. The latter must be especially clearly distinguished. * * *"
It was of significance, therefore, in evaluating the validity of the board's action, that gasoline filling stations are not absolutely prohibited in a business B1 district so as to require a finding by the board of "undue hardship," in order to entitle the applicant to a recommendation of a variance under N.J.S.A. 40:55-39(d).
On the contrary, it was the function of the board to determine only whether on the evidence the applicant had shown "compliance with the standards or requisites set forth in the ordinance" in which event "the right to the exception" existed, subject to such specific safeguarding conditions as the nature, location and incidents of the particular use required. Thus, since the board was dealing with a special exception rather than a variance, the trial court properly disregarded the board's findings of an absence of proof of undue hardship, or a lack of showing of local need, two of the reasons the board gave as bases for the denial of the application.
This narrowed the question before the judge to whether the evidence, considered in the light of the board's local expertise and of its knowledge of local conditions, justified the denial upon the enumerated considerations sounding in public safety and welfare, i.e., the volume of traffic flow at the intersection, danger to pedestrians arising *446 from ingress and egress of motor vehicles, and the claimed inability of the board to provide adequate safeguards for the safety of persons in such circumstances, irrespective of considerations of undue hardship or public need.
In effect, the trial court concluded that the relevant reasons assigned as the bases of the board's action were not supported by the evidence. We agree.
As we have already noted, the plaintiff offered substantial proof both by way of factual testimony, and opinion evidence that the hazards to safety envisioned by the board were not founded in actual experience. Not a word of testimony was introduced to contravene plaintiff's thesis. Hence, it was reasonable for the trial judge to determine that the board's conclusions regarding the dangers to the public safety derived from considerations dehors the record. This alone did not necessarily make the board's decision unsustainable. As was noted in Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div. 1960), certif. denied 32 N.J. 347 (1960):
"The board of adjustment exercises a quasi-judicial function. * * * In so functioning, as with other administrative agencies, it has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal. * * *
The board is not obliged to function in a vacuum. It may and should bring to bear in its deliberations the general information and experience of its individual members."
See also Pennsylvania Railroad Co. v. Dept. of Public Utilities, 14 N.J. 411, 427 (1954).
But in the Reinauer case the court also said:
"Although it must be recognized that generally matters dehors the record, of which a board of adjustment has knowledge or takes official notice, must be made a part of the record in order to afford the applicant a fair opportunity of refutation, [citing cases], it does not follow that in every instance such matters upon which the board relies in weighing the evidence and reaching a reasoned conclusion must be so spread upon the record. Where matters so recognized and *447 employed in reaching a conclusion are of such a self-evident nature that it is beyond reasonable debate that they could not be rebutted or contradicted there is no necessity to accord an applicant such an opportunity." (59 N.J. Super., at p. 203)
We take this to mean that while the administrative body, for sound reasons of policy, is not always bound to the strict record, it may not predicate a decision on matters extra the record unless they are of such common knowledge as to refute reasonable debate. Such was not the case here.
We likewise find untenable the board's asserted inability to lay down adequate conditions and safeguards because of the traffic and pedestrian problems it found to exist. It is somewhat difficult to grapple with this premise since it derives not from the proof, but from the personal view-points of members of the board that a hazard existed, notwithstanding substantial and uncontradicted evidence to the contrary. In Tullo, supra, the court discussed the criteria for determining what safeguards are necessary, and said:
"Each application must be considered in its peculiar factual setting and the quantum of proof required will necessarily vary. * * * The * * * statutory standard of absence of substantial detriment to the public good must have reference in * * * [a special exception] case primarily to the weighing of the admitted general utility of the use and the public convenience of the requested location against the effect of disadvantageous factors on other uses in the area. The ordinance requirements of the location being not detrimental to the health, safety and general welfare of the community and being reasonably necessary for community convenience have much the same connotation." (54 N.J. Super., at pp. 496-497)
It would frustrate justice if in a case such as this, an applicant for a special use or exception established his right to it, and was then denied the exception only because of a claimed inability to surround it with proper safeguards. Such "inability" standing alone should furnish no reason for denial, considering the broad powers of the board to effect a balance of the rights of the property owner *448 and the rights of the public, by regulation of the use in question.
We are satisfied that Judge Fusco in the exercise of the judicial function properly concluded on the evidence of the case that the board's action in determining that the granting of the exception would create a condition of hazard to the public, unremediable by any form of safety regulation, was arbitrary and unreasonable.
The judgment is affirmed.