Jack Stanislaw, J.
This article 78 proceeding is brought to review and annul a decision of respondent Board of Appeals of the Town of Southold (“ Board ”) which granted permission to respondents Tyler to use a portion of their two-acre parcel of land, located on the north side of School House Boad, in the hamlet of Cutchogue, Town of Southold, for the operation of a transient trailer camp area, pursuant to the applicable sections of the town’s Building Zone Ordinance. The Tylers reside in a home located east of the subject parcel, on School House Boad; and immediately to the west is land, owned by the town, used for drainage purposes.
Petitioners own property adjacent to the subject premises, as follows: William J. Baxter, Jr., owns a small parcel on the westerly side, north of the land owned by the town; further north of that property and bordering the northerly boundary of the subject premises is a 30-acre parcel, owned by petitioners Baxter and G-oeller; petitioner Kurczewski owns a 26-acre parcel, which borders the easterly side of the subject premises.
Under the town’s original Zoning Ordinance, enacted in 1957, *350 all of the property in the surrounding area, including the Tyler premises, was zoned “ A ” Residential and Agricultural. In March of 1958, the subject parcel, as well as property along the south side of School House Road (opposite the Tyler property) was rezoned “ B ” Business. The Tylers then constructed a concrete block garage on their property and, for the past 10 years, have been conducting a public garage business there. In 1965, upon the application of petitioners Baxter, a parcel of land owned by them on the southeast corner of School House Road and G-riffing Street (diagonally opposite the Tyler property) was rezoned from “ A ” Residential and Agricultural to a “ B-2 ” Business District. Except for said parcel, petitioners are using their land only for farming purposes.
East of the Tyler residence and along both sides of School House Road are about a dozen homes built on relatively small plots. West of the 30-acre parcel owned by petitioners Baxter and Goeller, is a large tract of land owned by the Sacred Heart Roman Catholic Church. About 150 feet south of School House Road is property owned by the Cutchogue Elementary School. The school house itself is on Depot Lane, approximately 1,000 feet from the subject parcel.
Petitioners claim the Board’s decision is: (1) not in harmony with the general purpose and intent of the Building Ordinance of the town; (2) not in the interest of the public health, safety and the general welfare of the community; (3) a flagrant violation and abuse of the discretion vested in the Board of Appeals; (4) without evidence or findings and not warranted by the facts; and (5) damaging to petitioners in that it reduces the value of their property. They further contend that the Tylers failed to establish or comply with the standards and requirements of article VIII, section 801-C, of the town’s zoning ordinance and that the evidence presented at the hearing of the application indicates that the standards and requirements necessary to grant a special exception in this case do not exist.
It is not disputed that, under the town’s Building Zone Ordinance, a trailer camp (consisting of “ any lot, piece or parcel of ground where two or more tents, tent houses, camp cottages, house cars or house trailers used as living or sleeping quarters are or may be located ” (art. I, § 100, subd. 23B), may be permitted in a “ B ” Business District “ when authorized as a special exception by the Board of Appeals ” (art. III, § 350, subd. 4; art. IV, § 400, subd. 1).
Article VIII (§ 801 A, subd. C[1] [a]) of the ordinance provides that before approval of such permissive use shall be given, the Board of Appeals shall determine:
*351 “ (1) That the use will not prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts;
“ (2) That the use will not prevent the orderly and reasonable use permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established use in adjacent use districts;
“ (3) That the safety, the health, the welfare, the comfort, the convenience or the order of the Town will not be adversely affected by the proposed use and its location; and
“ (4) That the use will be in harmony with and promote the general purposes and intent of this Ordinance.”
Subdivision C(1) (b) of said article enumerates 12 separate items to be taken into consideration by the Board in making its determination, including: the character of the existing and probable development of the area; conservation of property values and encouragement of most appropriate uses of. the land; traffic congestion; availability of adequate sewage facilities; whether the proposed operation will cause obnoxious by-products, noise or undue interference with the orderly enjoyment by the public of other facilities in the area; whether adequate parking facilities will be provided by the owner of the plot; potential hazards to life, limb and property; overcrowding of land or undue concentration of population; the sufficiency of the plot area; and whether it is unreasonably near a church, school, theatre, recreational area or other place of public assembly. Subdivision C(1)(c) of the article directs the Board, in authorizing such permissive uses, to “ impose such conditions and safeguards as it may deem appropriate, necessary or desirable to preserve and protect the spirit and objectives of this Ordinance. ’ ’
The town ordinance, relating to the regulation of tourist, trailer and house trailer camps requires the operator of such camp to: (1) possess a nontransferable permit from the Department of Health and the Town Board, subject to revocation for cause; (2) submit a plan showing the area of the plot to be used, proposed methods of garbage and sewage disposal and sources of light and water supply, subject to approval by the Board of Health; (3) allow at least 40 by 50 feet in area for each unit upon which a tent, trailer or camp cottage is to be erected or placed; (4) maintain detailed records, available for inspection; (5) and provide a suitable planting at least five feet high to screen the trailer camp from public lands and highways, the location of which shall be approved by the Town Board.
*352 The decision of respondent Board, granting the application is as follows:
“After investigation and inspection the Board finds that the applicant requests permission to operate a transient travel trailer camp area. The applicant owns a lot 373 feet on the west boundary, 205 on the north boundary, approximately 412 feet deep. The concrete block garage that is occupying part of the property is located 110 feet from School House Road. The area that would be used for the purpose described in this application would be west and north of the concrete garage. The plan shows spaces for 23 trailers. The area to be used is reasonably well buffered by vacant business land, as well as vacant residential land.
“ The Board finds that the public convenience and welfare and justice will be served and the legally established or permitted use of neighborhood property and adjoining use districts will not be permanently or substantially injured and the spirit of the Ordinance will be observed. The proposed use being applied for is one of the recommendations made by the Raymond & May Assoc. Survey.
‘1 Therefore, it was resolved Clifford & Edwina Tyler, School House Road, Cutchogue, New York, be granted permission to operate a transient trailer camp area for a period of two years. At the end of two years, the applicant may apply for a renewal. This renewal will be by special permit subject to the approval of the Town Board and the Health Dept. The Board of Appeals finds it is their obligation to the Town of Southold .to determine after two years, trial period, whether or not this use should be continued. ’ ’
The Tylers testified at the public hearing held on their application that their camp would probably be open from early spring to late fall and be equipped with water, sewage, electricity, garbage disposal, fire extinguishers and lavatory facilities (which, pursuant to the ordinance, will require approval by the Board of Health and the Town Board). They further agree to comply with all standards imposed by the ordinance and conditions imposed by the Board.
The only party who testified in opposition to the application was Richard F. Lark, attorney for the petitioners herein. He stated that although his clients’ property is now devoted to farming purposes, they anticipate that it will be used for residential purposes “ in the not too distant future that the proposed trailer camp “will inhibit any resale value that [the adjacent property] might have and impose a burden on the town with respect to police protection * * * and # * * *353 other governmental agencies, such as the local fire department ” (although this burden is implicit in the ordinance itself and not peculiar to the subject premises).
When asked by the chairman whether the safety, health, welfare, comfort and convenience or the order of the town will be adversely affected by the proposed use, Mr. Lark replied: “ No, I can’t say at this time. * * * I can’t forecast that just because you are having the transient trailer camp adjacent to a residential parcel that it is going to infringe upon the people’s right on the residential parcel. The owners of adjacent parcel feel that they will have trouble developing the land for residential purposes for resale values because of the transient travel camp. That is their contention. ’ ’ When asked how the trailer camp would harm the residential development of the community, Mr. Lark replied: “It would inhibit the property values * * * It is felt by the owners of the property that people would not want to buy a lot adjacent to a transient trailer camp.” But as noted by the applicant, neither is the operation of a public garage desirable next door to a residence.
Mr. Lark pointed out that there is a public school about 1,000 feet from the subject property, but none of the residents of the area or representatives of the school board or the church appeared in opposition.
The ordinance prescribes no fixed distance bet’ween a school and church and the operation of a trailer camp. It merely directs the Board to “give consideration” to “whether the use to be operated is unreasonably near to a church [or] school ’ ’ (art. VIII, § 801 C, [b] [12]). With respect to the proximity of the school, the chairman noted: “We have had this come up before. How close does something have to be to a church or school to be a hazard to it. Would it be 100 feet, 200 feet? ” To that, Mr. Lark replied: “I don’t know. ’ ’ If the legislative body which enacted the ordinance intended that no trailer camp shall be located 1,000 feet from a church or school, the section would have said so. Instead, it relegated that decision to the discretion of the Board.
The court has inspected the site involved in this application as well as the surrounding area. In my opinion, the existing operation of an unsightly garage and gasoline filling station, cluttered with junk and dilapidated vehicles is an ugly blight on an otherwise charming and relatively peaceful rural community. It is difficult to imagine how any change from the present operation and untidy appearance of the premises would not be an improvement. Although it may well be that this court *354 would prefer not to see a trailer camp located at this particular site or anywhere else in this particular area, the question before us is not a matter of personal preference but whether there is some rational basis for the Board’s decision in granting the permit. On,an application such as this, the court may not substitute its judgment either for the legislative body which enacted the ordinance or the administrative agency which granted the permit. The ordinance is presumed valid and the decision of the Board may not be reversed unless it is so unreasonable and arbitrary that it is illegal and, therefore, void.
Where a zoning ordinance, such as in this case, authorizes a “ special exception ” or “ special permit ” subject to administrative approval, what is involved in a use which is permitted rather than proscribed by the zoning regulations and, for that reason, imposes upon the Board, as well as the applicant, a duty and burden entirely different than an application for a variance (3 Anderson, American Law of Zoning, §§ 15.01, 15.11). In the latter case, the Board’s power is to be sparingly exercised and only in rare instances, based upon unique circumstances and a showing of unnecessary hardship. But no such proof is required for a special exception permit. The issuance of such a permit is a duty imposed upon the Board once it is shown that the proposed use meets the standards prescribed by the ordinance (Matter of Family Consultation Serv. v. Howard, 14 Misc 2d 194).
The denial of a special exception permit may not be founded upon conclusions which are speculative, sentimental, personal, vague or merely an excuse to prohibit the use requested. For example, the decision by a zoning board of appeals which stated that a permit for a club in a residential area “ would destroy the rural, bucolic atmosphere of the subject premises and its immediate vicinity without regard to the present, existing and probable future development of the Town * # * and would not be in accordance with the present proposed comprehensive zoning plan of the entire town ’ ’ was reversed on the ground the denial was arbitrary and unreasonable (Matter of New Morton Vil. Pool & Recreation Assn. v. Town Bd. of Town of Oyster Bay, 21 Misc 2d 987, 989).
Similarly, the naked claim that the use will have a tendency to depreciate adjacent lands is insufficient to deny a special permit, particularly where (as in this case) there is no showing that the existing use does not tend to produce a similar effect; no.r may such a permit be denied on the ground that the use may be so conducted as to become a nuisance; and while the facts disclosed by objecting landowners should be considered *355 by the Board, even cumulatively they afford no sound basis for denial (3 Anderson, American Law of Zoning, §§ 15.24, 15.27).
Where, as in this case, the record contains no evidence which controverts the applicant’s testimony that he is ready, willing and able to meet the standards of the ordinance, the Board’s refusal to issue the permit or grant the exception will be reversed by the courts as an abuse of discretion (Anderson v. Board of Stds. & Appeals, 82 N. Y. S. 2d 206; Larkfield Equities v. Larkin, 181 N. Y. S. 2d 684; Krust v. Hill, 212 N. Y. S. 2d 981). True, this court has the power to reverse a decision which is arbitrary, unreasonable or capricious, but where the evidence is questionable or conflicting, the Board is entitled to have the doubts resolved in its favor (3 Anderson, American Law of Zoning, § 15.17).
It should be noted that while some zoning ordinances require the applicant to prove that the permit is necessary for the public convenience and welfare, the ordinance here involved merely requires that the use does not adversely affect such considerations (art. VIII, 801 A, subd. C[1][a]). If respondents Tyler have not proved the negative aspect of that requirement, petitioners surely have not proved the positive. But since the permit is only for a two-year trial period, both sides may again have an opportunity to be heard, in the event the Tylers apply for a renewal.
The petition is dismissed, on the condition that the granting of the special exception at this time shall neither be urged by the Tylers, nor relied on by respondent Board, on any subsequent application for a renewal at the expiration of the two-year period. If such application is then made, it shall be subject to disposition in accordance with the prevailing zoning ordinances as if brought de novo.