152 N.J. Super. 354 (1977)
377 A.2d 1225
VALUE OIL COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
TOWN OF IRVINGTON, A MUNICIPAL CORPORATION, AND ZONING BOARD OF ADJUSTMENT OF THE TOWN OF IRVINGTON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 29, 1977.
*358 Mr. Richard A. Fazzari for plaintiff (Mr. Arthur W. Burgess, attorney).
Mr. Henry E. Rzemieniewski for defendant Town of Irvington.
Mr. Howard I. Waxman for defendant Zoning Board of Adjustment of the Town of Irvington.
MARZULLI, J.S.C.
The issue presented by plaintiff's complaint in lieu of prerogative writs is whether a special exception permit must issue when an applicant demonstrates compliance with all enumerated criteria of a zoning ordinance.
On January 23, 1976 plaintiff Value Oil Company made application for a special use permit[1] to the Zoning Board of Adjustment of the Town of Irvington for permission to use a premises in the Town of Irvington as a gasoline service station.
*359 Authority for a special exception provision in a municipality's zoning ordinance is derived from N.J.S.A. 40:55-39[2]. This statute provides in pertinent part:
The board of adjustment shall have the power to:

* * * * * * * *
b. Hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass.

* * * * * * * *
No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.
The specific provisions of the zoning ordinance of Irvington relevant to the case at bar are §§ 903.2 and 904.7 et seq. These sections provide:

903.2 The Planinng Board within fifteen (15) days after review
 of the plans by the Planning Board shall submit to
 the Zoning Board of Adjustment its comments regarding
 the adequacy of the site plan and its conformance and
 effect on the overall master plan of the Town. The Zoning
 Board shall not take action on the permit until the
 Board receives written comments from the Planning Board
 or after the fifteen (15) day period, whichever is first.
 The following uses may be permitted provided a special
 use permit is obtained from the Zoning Board of Adjustment
 under the terms and specifications herein. Whereas
 the necessity for certain specific uses is recognized and
 at the same time appreciating the fact that they or any
 one of them may be, or become, inimical to the public
 health, safety, and general welfare to the community if
 located without due consideration to the existing conditions
 and surroundings, the following standards and proceedings

*360
 are hereby established, which are intended to provide
 the Zoning Board of Adjustment with a guide for the
 purpose of reviewing certain uses not otherwise permitted
 in this Ordinance. The Zoning Board of Adjustment shall
 review and administer applications for the following uses
 according to procedures spelled out for the Zoning Board
 of Adjustment.
 * * * * * * * *
904.7 Gasoline Service Stations: Motor vehicle service stations
 may be permitted in the B-2 Local Business District, M-1
 Heavy Industrial Manufacturing District and M-2 Light
 Industrial Manufacturing District with a Special Use Permit
 provided the following standards are observed:
904.7-1 In addition to the information required in the site plan
 as spelled out in Section 503 of this Ordinance, the
 site plan shall also show the number and location of
 fuel tanks to be installed, the dimensions and capacity
 of each storage tank, the depth the tanks will be placed
 below the ground, the number and location of pumps
 to be installed, the type of structure and accessory
 buildings to be constructed, the number of automobiles
 which are to be garaged.
904.7-2 Motor vehicle service stations in a business zone shall
 comply with lot and area and width requirements of
 the B-2 Local Business District, and in a Light Industrial
 and Heavy Industrial Manufacturing District
 shall comply with lot and area and width requirements
 of the M-1 and M-2 zones.
904.7-3 Driveways shall not be more than twenty-four (24)
 feet wide at any point. Driveways must at least be five
 feet from any side lot line and twenty-five feet from
 the intersection of street lines. No more than two
 driveways shall be permitted for each one hundred (100)
 feet of street frontage.
904.7-4 The entire area of the site travelled by motor vehicles
 shall be hard surfaced.
904.7-5 Any repair of motor vehicles shall be performed in a
 fully enclosed building and no motor vehicles shall be
 offered for sale on the site. No motor vehicle parts, or
 partially dismantled motor vehicles shall be stored outside
 of an enclosed building.
904.7-6 No vehicles shall be permitted to be standing or parked
 on the premises of a motor vehicle service station other
 than those used or serviced by the employees in the
 indirect or direct operation of the establishment.
904.7-7 Accessory goods for sale may be displayed on the pump
 island and the building island only. The outdoor display
 of oil cans, and/or antifreeze and similar products

*361
 may be displayed on the respective island if provided
 for in a suitable metal stand or rack.
904.7-8 No motor vehicle service station or public garage shall
 be located within five hundred (500) feet of any public
 entrance to a school, library, hospital or charitable
 institution. Such distance shall be measured in a straight
 line from said public entrance to the lot line nearest
 said entrance along the street line.
904.7-9 Where such uses abut another property, appropriate
 evergreen planting or attractive non-corrosive fencing
 with a minimum height of six feet shall be provided
 and maintained, thereby screening and abutting properties.
904.7-10 All fuel pumps shall be located at least twenty (20)
 feet from any street or property line and shall be attendant
 operated.

The premises in question are situated on the south side of Springfield Avenue, a major thoroughfare, between Sharon and Bruen Avenues, and within a few blocks of a northbound entrance to the Garden State Parkway. They are in a business area on a site previously occupied by a gasoline service station. Behind the site on Bruen Avenue there is a three-story garden apartment building. A gasoline service station which closes at about 10 P.M. adjoins the site on the west side. The premises lie within a B-2 Zone  Local Business District, as delineated by § 609 et seq. of the zoning ordinance,[3] where a gasoline service station is permitted provided a special use permit is obtained.
Value Oil seeks to demolish the existing building, replace it with a modern one and operate a 24-hour, gasoline-only station.
The application of Value Oil was referred to the Irvington Planning Board pursuant to § 1102.1-1 of the zoning ordinance. Finding that the construction and operation of a *362 gasoline service station on this site would not have an adverse effect on the development and planning of the town, the planning board on February 26, 1976 gave its approval to the application.
Since Springfield Avenue is a county highway, Value Oil's application was then referred to the Essex County Planning Board for review, with approval being granted on April 15, 1976. Following a plenary hearing before the zoning board on April 26, 1976 the application was denied because the proposed width of the driveways of the gasoline service station exceeded the 24-foot limit imposed by the zoning ordinance. The driveway widths, however, were within the 29-foot limits required for county highways. Due to the fact that contrary recommendations on the application were made by the planning board and the zoning board, the matter was referred, pursuant to § 1102.1-3 of the zoning ordinance, to the town council for a final determination. On June 22, 1976 the town council adopted a resolution that the county-dictated driveway widths govern and remanded the application to the zoning board. The board affirmed its denial on September 7, 1976.
There still existing a difference in disposition  the planning board approving and the zoning board denying Value Oil's application  the matter was again referred to the town council. A hearing was held on October 20, 1976 and by resolution of January 11, 1977 the town council approved the action of the zoning board denying Value Oil's application for a special use permit.
The parties agree that Value Oil has satisfied and demonstrated its compliance with all the specific criteria of § 904.7 of the zoning ordinance. The zoning board and town, however, assert that despite this compliance they still possess the discretion to deny the application upon their finding that the construction and operation of a gasoline service station at this location would be detrimental to the public good and would substantially impair the intent and purpose of the zone plan and zoning ordinance.
*363 No courts of our State have heretofore dealt with the precise issue presented before this court. In light of this, a discussion of applicable zoning constructs is appropriate.
Zoning principles embody a conflict between competing forces. On one side of the continuum is an individual's common law right to use and develop his real property as he desires, provided no nuisance is thereby created. On the other side is the legislative body's inherent police power to protect and promote the health, safety and welfare of its citizens. In an attempt to lend a mediating influence to these competitive forces, municipalities, through authority granted by the Legislature, generally provide for a zoning board to act as a fulcrum in granting variances and special exceptions. Of importance in the case at bar is that this court has before it for consideration a special exception, in contradistinction to a variance to the zoning ordinance.
The fundamental distinction between these two terms is that the former "is legislatively permitted in a zone subject to controls whereas the latter is legislatively prohibited but may be allowed for special reasons." (Emphasis in original). Verona, Inc. v. West Caldwell Mayor and Council, 49 N.J. 274, 282 (1967). In Tullo v. Millburn Tp., 54 N.J. Super. 483 (App. Div. 1959), Judge Hall asserted in his oft-quoted discussion on special exceptions:
The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropriate and not essentially incompatible with the basic uses in any zone (or in certain particular zones), but not at every location therein or without restrictions or conditions being imposed by reason of special problems the use or its particular location in relation to neighboring properties presents from a zoning standpoint, such as traffic congestion, safety, health, noise, and the like. The enabling act therefore permits the local ordinance to require approval of the local administrative agency as to the location of such use within the zone.... The point is that such special uses are permissive in the particular zone under the ordinance and neither non-conforming nor akin to a variance.
[at 490-491]
*364 To obtain a special exception permit an applicant must satisfy three requirements. He must produce proof that the requested exception can be granted without substantial detriment to the public good, that it will not substantially impair the intent and purpose of the zone plan and zoning ordinance of the municipality, and that he has complied with all the specifically enumerated criteria of the ordinance. Verona, Inc., supra, 49 N.J. at 283-84; Tullo, supra, 54 N.J. Super. at 496.
Municipalities in our State have been conferred with broad powers to promulgate zoning regulations. N.J.S.A. 40:55-30; N.J.S.A. 40:55-32. See Ward v. Scott, 16 N.J. 16, 22 (1954). Concomitant with this power is a presumption of reasonableness and validity which attaches to legislative determinations of a municipality's governing body. Collingswood v. Ringgold, 66 N.J. 350, 358 (1975); Shell Oil Co. v. Hanover Tp. Bd. of Adj., 38 N.J. 403, 413 (1962).
This presumption applies equally to actions taken by a municipality's zoning board of adjustment. The general doctrine enunciated by our courts is that the determination of a local zoning board of adjustment is presumptively correct and its decision should not be overridden unless clearly demonstrated to be arbitrary, capricious or patently unreasonable. Ardolino v. Florham Park Bd. of Adj., 24 N.J. 94, 105 (1957). Accord, Griggs v. Princeton Bd. of Adj., 75 N.J. Super. 438, 443 (App. Div. 1962). The rationale for this rule is that a local zoning board possesses the expertise and special knowledge of local conditions necessary to decide matters coming within its cognizance. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296 (1965); Schmidt v. Newark Bd. of Adj., 9 N.J. 405, 423 (1952).
The court's role in reviewing a determination of a local zoning board of adjustment is thus narrowly circumscribed. It is not the role of the judiciary to substitute its judgment for that of the body to which the Legislature has delegated the task of determination of the criteria for special *365 exception permits. Tullo, supra, 54 N.J. Super. at 498; Schmidt, supra 9 N.J. at 423. See Tomko v. Vissers, 21 N.J. 226, 241 (1956).
Therefore, only where the action taken by a local zoning board of adjustment is so arbitrary, capricious or patently unreasonable so as to constitute an abuse of discretion will its action be overturned. Schmidt, supra, 9 N.J. at 423. Accord, Nalitt v. Millburn Tp., 66 N.J. Super. 292, 298 (Law Div. 1961). The burden of establishing such improper action is upon the applicant. Brandt v. Mt. Holly Tp. Bd. of Adj., 16 N.J. Super. 113, 117 (App. Div. 1951).
On their face, §§ 903.2 and 904.7 et seq. would seem to indicate that a granting of a special use permit is not solely conditioned upon meeting the enumerated criteria in § 904.7 et seq. Section 904.7 provides that "service stations may be permitted in the B-2 Local Business District * * * with a Special Use Permit provided the following standards are observed: * * *." (Emphasis supplied). This is not, however, a discretionary ordinance.
The general rule of construction is that "may" means permissive and "shall" means mandatory. Harvey v. Essex Cty. Freeholder Bd., 30 N.J. 381, 391 (1959). Accord, Franklin Estates, Inc. v. Edison Tp., 142 N.J. Super. 179, 184 (App. Div. 1976). Where logic and context are required to meet the ends of justice, however, courts have often interpreted "may" as connoting a mandatory meaning. Leeds v. Harrison, 9 N.J. 202, 213 (1952); McDonald v. Hudson Cty. Freeholder Bd., 99 N.J.L. 170, 172 (E. & A. 1923); Bayonne v. North Jersey Dist. Water Supply Comm'n, 30 N.J. Super. 409, 417-418 (App. Div. 1954). As Mr. Justice Holmes observed, "[T]he general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down." U.S. v. Whitridge, 197 U.S. 135, 143, 25 S.Ct. 406, 408, 49 L.Ed. 696, 698 (1905). Indeed, justice should not be the handmaiden of grammar. Minor v. The Mechanics Bank of Alexandria, 26 U.S. 46, 7 L.Ed. 46 (1828); Appeal of Burnap, 94 Conn. 286, 108 *366 A. 802 (Sup. Ct. Err. 1920); Stapler v. El Dora Oil Co., 27 Cal. App. 516, 150 P. 643 (D. Ct. App. 1915).
Such is true in the instant case. Upon Value Oil's compliance with the ten criteria of § 904.7 et seq., it was entitled to a special use permit. The zoning board lacked discretion to refuse to grant the permit.
Exceptions fulfill the practical recognition that specific uses of real property are in conformity with the basic purpose and design of a particular zone, although the use may not be beneficial in every location in the zone. The exception procedure is safeguarded by standards set forth in the ordinance. The requisite criteria upon which a special exception permit can issue "must be found in the local legislative act * * *." Moriarty v. Pozner, 21 N.J. 199, 210 (1956); see Stone v. Cray, 89 N.H. 483, 200 A. 517 (Sup. Ct. 1938); Flynn v. Pawtucket Zoning Bd. of Review, 77 R.I. 118, 73 A.2d 808 (Sup. Ct. 1959). A municipality which seeks to control the construction and operation of gasoline service stations under its police power must set forth specific standards upon which the granting or refusal of a permit is dependent. Phillips v. Belleville, 135 N.J.L. 271, 274 (Sup. Ct. 1947); 801 Avenue C. Inc. v. Bayonne, 127 N.J. Super. 128, 134 (App. Div. 1974).
There is no question that the standards for issuance of a special use permit for the construction and operation of a gasoline service station are clearly delineated in § 904.7 et seq. and that plaintiff has completely and fully complied with the requisite ten criteria. Such statutorily delineated requisites cannot be varied or modified by the zoning board. Moriarty, supra, 21 N.J. at 210; see Service Realty Corp. v. Greenwich Planning and Zoning Bd. of App., 141 Conn. 632, 636, 109 A.2d 256, 259 (Sup. Ct. Err. 1954). This principle is specifically contained in the zoning ordinance itself. Section 1102.1-2 provides:
In approving such an application for a Special Use Permit, the Zoning Board of Adjustment may impose any conditions it deems necessary to accomplish the reasonable application of applicable standards *367 as provided in Article 9, Section 901, and may deny any such applications, but only in accordance with such standards. [Emphasis supplied][4]
By the board's denial of Value Oil's application, largely resting upon the fact that the gasoline service station would remain open 24 hours a day, an implied eleventh criteria was annexed to the ordinance. This criteria was that a gasoline service station located in the zone, and on the premises in question, could not operate 24 hours a day. Nowhere is this explicitly or implicitly stated as a criterion which must be complied with as a condition precedent to obtaining a special use permit. The role of the board in determining whether a permit will issue is confined by the standards enacted by the town's legislative body, the town council. The board has no power to legislate and must act upon the criteria enunciated by the town council in the zoning ordinance, imposing such conditions it deems necessary to accomplish the reasonable application of these criteria.
It may be argued that the general provision of § 903.2 is a criterion above and beyond the ten specific criteria of § 904.7 et seq. When read in pari materia it is clear that this is not a proper construction of these two sections. The ten specific criteria are not additional to the general language of § 903.2, but are definitional in nature. They define what is meant by "public health, safety, and general welfare" in specific language and conditions. Compliance with the criteria of § 904.7 et seq. is compliance with § 903.2.
An applicant for a special exception permit must have notice of that which he is required to prove to obtain such a permit. As a criminal statute which fails to delineate which activity it proscribes, thereby failing to give notice of the type of action which constitutes an offense offends our notion of substantial justice, so too does a zoning ordinance *368 which fails to delineate with specificity the criteria for obtaining a special exception permit. Although the instant case does not come before this court under the new Municipal Land Use Law, its provisions may be used for guidance. N.J.S.A. 40:55D-67(a) provides in pertinent part:
A zoning ordinance may provide for conditional uses to be granted by the planning board according to definite specifications and standards which shall be clearly set forth with sufficient certainty and definiteness to enable the developer to know their limit and extent. * * * (Emphasis supplied)
This being a case of first impression in this State, guidance may be had from those states' courts which have dealt with this issue. The Minnesota, New Hampshire and New York courts have dealt with the question before this court. They have established a sound rule that upon compliance with all statutory criteria, a special exception permit must issue. Hay v. Grow Tp., 296 Minn. 1, 206 N.W.2d 19 (Sup. Ct. 1973); Inland Construction Co. v. Bloomington, 292 Minn. 374, 195 N.W.2d 558 (Sup. Ct. 1972); Zylka v. Crystal, 283 Minn. 192, 167 N.W.2d 45 (Sup. Ct. 1969). Accord, Metro 500, Inc. v. Brooklyn Park, 297 Minn. 294, 211 N.W.2d 358 (Sup. Ct. 1973); Main Realty, Inc. v. Pagel, 296 Minn. 362, 208 N.W.2d 758 (Sup. Ct. 1973); Enright v. Bloomington, 295 Minn. 186, 203 N.W.2d 396 (Sup. Ct. 1973); Shell Oil Co. v. Manchester, 101 N.H. 76, 133 A.2d 501 (Sup. Ct. 1957); Stone v. Cray, supra; Baxter v. Gillispie, 60 Misc.2d 349, 303 N.Y.S.2d 290 (Sup. Ct. 1969); Krust v. Hill, 212 N.Y.S.2d 981 (Sup. Ct. 1961); Family Consultation Service of Eastchester, Inc. v. Howard, 14 Misc.2d 194, 176 N.Y.S.2d 707 (Sup Ct. 1958). Accord, 3 Anderson, American Law of Zoning (2d ed. 1977), § 19.16 at 418-419.
Once an applicant has demonstrated compliance with the provisions of the zoning ordinance, a duty is imposed upon the board to grant a permit. Krust, supra. The issuance of such permit is an affirmative duty imposed upon the zoning board following an applicant's evidencing proof of compliance *369 with the statutory conditions. Family Consultation Service of Eastchester, Inc., supra, 14 Misc.2d at 196, 176 N.Y.S.2d at 710; Baxter, supra, 60 Misc.2d at 354, 303 N.Y.S.2d at 296. See also, Holmes & Murphy, Inc. v. Bush, 6 App. Div.2d 200, 176 N.Y.S.2d 183 (App. Div. 1958); Harrison-Warren Realty Co. v. Spencer, 124 Misc. 783, 209 N.Y.S. 355 (Sup. Ct. 1925).
A zoning board of adjustment may, therefore, not decline to issue a permit where, as in the case at bar, an applicant has fully complied with the ordinance. A permit must issue with the board having no discretion to withhold it. Turner v. Hammond, 270 Md. 41, 60, 310 A.2d 543, 553 (Ct. App. 1973). As Judge Hall so aptly stated in Tullo, supra:
If the board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose by reason of the nature, location and incidents of the particular use. [54 N.J. Super. at 491; emphasis supplied]
Accord, Griggs, supra, 75 N.J. Super. at 445.
In the case at bar the statutorily enumerated standards delimit the circumstances under which a special use permit is allowable. The sole function of the zoning board is to decide whether the criteria have been satisfied and what reasonable conditions, if any, it deems necessary to foster the intent and purpose of the zone plan and zoning ordinance. It is clear that compliance with the standards of § 904.7 et seq. satisfies the negative criteria of N.J.S.A. 40:55-39.
This court, therefore, holds that where the planning board has determined that a gasoline service station would not have an adverse effect upon the development and planning of the town, the Essex County Planning Board has approved the special use application and the zoning board finds that the applicant has fully complied with the criteria set forth in the zoning ordinance, the denial of a special use permit is arbitrary, capricious and unreasonable as a matter of law.
*370 Value Oil further alleges that since the town has no ordinance which regulates the hours of operation of gasoline service stations, the zoning board does not possess the authority to deny the special use permit on the basis that its station intends to operate 24 hours a day. It is argued that this is an unconstitutional exercise of the town's inherent police power. In support of its position, Value Oil relies on our courts' recent decisions which have found ordinances regulating the hours of operation of certain businesses to be an unconstitutional exercise of the police power, there being no relationship between the restraint and the public health, safety, and welfare. Dock Watch Hollow Quarry Pit, Inc. v. Warren Tp., 142 N.J. Super. 103 (App. Div. 1976); Tomasi v. Wayne Tp., 126 N.J. Super. 169 (Law Div. 1973); Fasino v. Montvale Mayor and Council, 122 N.J. Super. 304 (Law Div. 1973), aff'd o.b., 129 N.J. Super. 461 (App. Div. 1973). It alleges that the zoning board's action is tantamount to the ordinances in those cases which prohibited the hours of operation of a specific or specific class of business establishment.
Although it is arguable that the action of the zoning board was tantamount to the town's passage of an ordinance regulating the hours of operation of gasoline service stations, thereby engrafting an implied eleventh criterion onto § 904.7, this court need not reach this issue. We are governed by the principle that courts should abstain from deciding an issue on constitutional grounds if other adequate bases exist. Donadio v. Cunningham, 58 N.J. 309, 326-327 (1971); Ahto v. Weaver, 39 N.J. 418, 428 (1963); Hildebrandt v. Bailey, 65 N.J. Super. 274, 285 (App. Div. 1961). This court has found that the zoning board has no legislative powers. Upon compliance with the ten criteria of § 904.7, an applicant is entitled as a matter of law to a Special Use Permit. Therefore, the question of the constitutionality of the board's action need not be reached.
Plaintiff's application for a special use permit for the construction and operation of a gasoline service station is *371 hereby remanded to the zoning board of adjustment of Irvington with a directive to issue same.
NOTES
[1] The zoning ordinance of Irvington refers to a "special use," yet N.J.S.A. 40:55-39(b) denotes such use as a "special exception."
[2] The within action is brought pursuant to authority delegated to local zoning boards of adjustment under N.J.S.A. 40:55-39(b). If a similar action were brought today, it would be premised upon the new Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., effective August 1, 1976. Under N.J.S.A. 40:55D-65(f) a municipal zoning ordinance may now provide for "conditional uses." These were previously denoted "special exceptions."
[3] Section 609 et seq. provides:

Section 609 B-2 Local Business District
* * * * * * * *
609.3 Uses Permitted with a Special Use Permit
609.3-1 Gasoline Service Stations
[4] Although § 1102.1-2 refers to § 901, it would appear that this is an error since the standards referred to are set forth in § 904.