John P. CoHalan, Jr., J.
This is an article 78 proceeding wherein petitioner seeks to review a determination of the respondent, Board of Zoning Appeals of the Town of Huntington, hereinafter referred to as the hoard.
On July 17, 1963 the board denied petitioner’s application for permission to operate a billiard parlor on Jericho Turnpike at Elwood, in the Town of Huntington. The subject property 'is zoned “general business ”. Before the petitioner may use the premises for a billiard parlor it must obtain permission from the Board of Appeals to operate a place of amusement under section 6 of article V, and article IX, of the Town Building Zone Ordinance. The board, in denying the application, stated the following:
‘1 The applicant herein seeks to establish a ‘ billiard academy ’ on the premises.
“ The applicant in his testimony describes this business as a new type of family entertainment which will cater to families, and families will ^o there to relax and play.
‘ ‘ The portrayal of the ‘ billiard academy ’ as one which is family patronized! is an attempt to eradicate the iniquitous reputation which marked the ‘ pool parlor ’ of yesterday.
“Mr. Power and Mr. Horn, members of the Board, visited new ‘ billiard academies ’ in Freeport and Kings Park. These are the so called new type of billiard academies. Neither Mr. Power or Mr. Horn found any evidence of family participation. The players appear to be the same type associated with the old fashioned ‘ pool parlor ’. Many of the people on the premises are using it as a ‘ hang out ’, and, apparently, have nothing better to do.
‘ ‘ In answer to a question as to what would prevent the ‘ billiard academy ’ from deteriorating into the old time ‘ pool parlor ’ the answer given by the applicant was, ‘ management. ’ However, management, as such, cannot be controlled by the Board.
*675 “ The Board finds that the proposal is contrary to the public welfare and interest. The utilization of the premises as a ‘ billiard academy ’ would seriously damage the neighborhood character and the result would adversely affect property values.
“ The application is therefore denied.”
Evidently the board had taken literally the statement of the English philosopher, Herbert Spencer, when he criticized billiard playing, saying: ‘ ‘ Proficiency at billiards is indicative of nothing but a misspent youth.” More recently Meredith Willson in the musical show, “ The Music Man”, speaking of billiards remarks: “That game with the 15 numbered balls is the devil’s tool.” Despite these critical reactions to billiards or pool, university clubs, fraternal organizations, social clubs, church organizations and thousands of private homes throughout the Country have billiard rooms where members of the organizations and of households and their guests enjoy billiards and pool. Why billiards is deemed a fine game when played in a private club or in a home and suddenly becomes an evil and devilish game when played in a billiard parlor is difficult to comprehend.
The record indicates that some disorderly conduct attaches to a neighborhood pizza parlor, and yet no one would think of forbidding the operation of such a business as a place of iniquity.
The income and tax revenue resulting from the operation of a billiard parlor is not considered unwholesome or improper. When properly managed and operated, billiard parlors provide means of employment for thousands of persons and some entertainment and exercise for many persons and families throughout the Country.
So that billiard and pocket billiard rooms may not become hangouts for criminal elements, the State a number of years ago enacted article 31 of the Penal Law (§§ 344, 355). These sections are specifically enacted for the licensing and control of public pocket billiard rooms. Applications are provided by the Department of State and careful scrutiny is made as to the persons for whom, and the places whereat, licenses are sought. (Penal Law, § 345.) Fines are imposed for violations and all funds collected, including license fees, are paid into the general funds of the State. Licenses are issued for a period of one year and each billiard or pocket billiard table is charged $10 per year for a license. Supervision of the operation, management and of the type of persons frequenting the billiard rooms is checked and reported under the policing powers of *676 the State (§ 348)and control of these operations is not within the province of local Board of Zoning Appeals.
It is doubtful whether a Town Board may properly adopt an ordinance which would prohibit the operation of a lawful business. However, in the instant proceeding the town did not exclude the maintenance and operation of a billiard parlor and specifically authorized the Board of Appeals to consider such applications and grant them under specified limitations. The determination of the board in the instant matter indicates that it will not approve the issuance of a permit for the maintenance and operation of a billiard parlor within the Town of Huntington — since the board members find the game of billiards, in a place to which the general public is invited, to be iniquitous and contrary to the public welfare. This is contrary to legislation adopted by the State of New York authorizing the operation of billiard parlors, when licensed as set forth in section 345 of the Penal Law as amended. The licensing and control of the operation of billiard parlors is a matter within the exclusive jurisdiction of the State. (See Matter of Incorporated Vil. of Lynbrook v. Simon, 236 N. Y. S. 2d 823, 825.)
The record shows that there are amusement rides and a ferris wheel in the area and a variety of retail businesses adjacent to the subject premises. Petitioner in this application plans to invest and incur obligations in the sum of approximately $50,000 to equip this billiard parlor. If this would create a “hangout for undesirables ” as suggested by the board, such investment would not be made or jeopardized since the Secretary of State would then properly refuse to issue or renew the license for the billiard room. We must assume that the police and State officers would not allow the operation or the continuance of operation of a billiard room wherein disorderly and criminal activities are permitted. We do not deem it within the power of the board to exclude all billiard parlors from the Town of Huntington, as indicated by the decision in this proceeding. Recently Mr. Justice Zaleski of this court determined in Parks v. Volz (N. Y. L. J., Feb. 7, 1964, p. 18, col. 3) that the board could not refuse to issue a permit for use of premises for a billiard parlor and stated “However, not enough proof was offered by petitioner to authorize the court to reach that conclusion. Therefore, the matter will be remitted to the board for further factual evidence and findings which will be susceptible of review ’ ’. There is no evidence in the instant record which would support the finding that the billiard parlor operation sought is contrary to public welfare and interest and *677 would impair the neighborhood character and would adversely affect property values. 1
Accordingly, the determination of the board is reversed and the matter is remitted to the board for further factual evidence and findings and particularly as they concern the subject of public welfare and impairment of the character of the neighborhood and evidence, if any, which would support the finding that real property values in the neighborhood are adversely affected by the granting of permission for the use of the property for a billiard parlor.