William Gr. Easton, J.
This is the reargnment of an article 78 proceeding to reverse and set aside a decision of the Zoning Board of Appeals of the Town of Walworth, New York, and for an order directing said board to issue a special permit to the petitioner for the erection of a mobile home community in said town. The court now has before it a stenographic transcript of the proceedings before the board, a copy of the zoning ordinance, a copy of the decision, and the answer of the respondents. The court has a brief from the petitioner’s attorney but none from the attorney for the respondent. In denying the application the seven-man board issued a written decision containing the following findings, to wit:
“ 1. A trailer park of between 750 to 1,000 residents superimposed on a town of only 4,000 would have bad sociological effects.
‘ ‘ 2. That the present highway system was inadequate to take care of the traffic engendered by the large number of cars in the parking lot.
‘ ‘ 3. That the congestion of trailers on that site and location would constitute a fire hazard.”
Upon the argument, respondents’ attorney acknowledged that paragraph No. 3 of the decision was of no significance. At the end of the decision was the following paragraph: 1 ‘ William Sterni moved that the special permit be granted. It was seconded by Robert McTigue and upon a roll call a vote of members voted ‘ nay ’. The motion was denied by unanimous vote. ’ ’
Petitioner urges that the decision was arbitrary, capricious and unreasonable. The ‘ ‘ special permit ’ ’ clause is contained in article 4 of section 16 of the ordinance, and there is another special section (20) thereof dealing exclusively with mobile homes and mobile home parks, the latter section containing more specifically the conditions to be imposed. The premises are located in an industrial zone in which the ordinance permitted the proposed usage for a mobile home park, and the petitioner submitted plans showing compliance with the many conditions imposed upon the application for a special permit under section 16, and specifically for a mobile home park under section 20. *942 Indeed, the board in its decision made no reference to and did not base its findings on any failure of the petitioner to comply or show the inability to comply with any of the conditions and requirements of the ordinance in these sections.
Of the two reasons advanced for denial of the permit the conclusion that the present highway system was inadequate to take care of the traffic engendered by a large number of cars in the parking lot is of no significance and is not a proper basis for denial of the permit, since in this industrial zone many, many other uses could have been properly had, without special permit, which would have engendered fully as much or more traffic as this proposed mobile home park, such as a factory or large commercial establishment. Furthermore, a perusal of the record shows no testimony or evidence that the highways were inadequate. The reference in the zoning law, section 20-2-C (6b), mentions traffic hazard, but only in connection with the location of recreation areas within the proposed mobile home park. Hence, the board’s finding in that connection is without support and is unreasonable and arbitrary. (Matter of YMCA of Greater N. Y. v. Burns, 13 A D 2d 1009 and cases cited; Matter of Spohrer v. Town of Oyster Bay, 29 Misc 2d 366; Matter of Demisay v. Town of Oyster Bay, 33 A D 2d 910.) In Matter of Spohrer v. Town of Oyster Bay (supra, p. 368) the court said: ‘ ‘ In short, there is not a scintilla of evidence in the record to show how a chip-putt or miniature golf course would add any more to traffic congestion than any other permitted use or enterprise ”.
Hence, the only remaining point of any significance made by the zoning board in its decision is that this proposed mobile home community (referred to by the board as a “ trailer park ” would have bad sociological effects. Webster’s Dictionary defines the word “sociological” as “oriented or directed toward social needs and problems ’ ’, or, ‘ ‘ relating to interpersonal and collective relationships rather than to individual psychology ”. The record discloses no evidence or proof substantiating this contention, except a reference that the influx of some 750 to 1,000 additional residents in the town of only 4,000 people would have a bad effect. This was a 98-acre parcel of land which could easily have been properly developed into a conventional subdivision of houses meeting the requirements of the ordinance and which also would have added a lot of additional residents in the town, or many subdivisions of a similar nature might well have been established. The town would have control of this proposed mobile home park, since any license issued therefor would be of one-year duration and renewal thereof *943 could well be rejected for any violation of the ordinance by the petitioner. Furthermore, the so-called * findings of the board in its decision were only conclusory in nature and were not true ‘ ‘ findings of fact ’ ’ which are necessary to support a decision granting or denying a special permit. A similar conclusion such as ‘1 contrary to public welfare and interest ’ ’ would be insufficient unless supported by findings to support such a conclusion. (Matter of Syosset Holding Corp. v. Schlimm, 15 Misc 2d 10; Matter of Rhodes v. Waters, 15 Misc 2d 119; Krust v. Hill, 212 N. Y. S. 2d 981; Matter of Mollineaux v. Michaelis, 29 Misc 2d 933, affd. 16 A D 2d 697; Matter of Premium Point Co., 223 N. Y. S. 2d 972; Matter of Billiard Corp. v. Horn, 42 Misc 2d 673; Matter of N. Y. Kappa Tau of Pi Lambda Phi v. Grosberg, 30 A D 2d 888; Baxter v. Gillispie, 60 Misc 2d 349.)
As was indicated in Matter of Billiard Corp. v. Horn (supra) a decision based on conclusions of this sort, to wit, £ ‘ bad sociological effects ’ ’ would be tantamount to holding that no permit for a mobile home park would be issued anywhere in the entire town. This is contrary to law, for, on the contrary, by enumerating mobile home parks as a permitted use when approved by the zoning board, the ordinance clearly indicates that such a use is consistent and in harmony with the over-all zoning plan (Matter of Syosset Holding Corp. v. Schlimm, supra).
And, as was said in Krust v. Hill (supra, p. 984) ££ The principal difficulty with petitioners’ position in this regard is that they seem to have lost sight of the fact that I.B.M.’s property is located in a zoned area which permits the construction of the tower sought to be erected as a main use. Unlike a variance which involves the varying of a zoning ordinance, a special permit deals with a compliance thereof, and imposes a duty upon a board of appeals to grant the permit once the applicant has complied with the particular conditions specified in the ordinance ”.
And, in Baxter v. Gillispie (supra, p. 354) the court said: £ £ Where a zoning ordinance, such as in this case, authorizes a £ special exception ’ or £ special permit ’ subject to administrative approval, what is involved is a use which is permitted rather than proscribed by the zoning regulations and, for that reason, imposes upon the Board, as well as the applicant, a duty and burden entirely different than an application for a variance * * * The issuance of such a permit is a duty imposed upon the Board once it is shown that the proposed use meets the standards prescribed by the ordinance. ’ ’
Another illustration of this point is the holding in Matter of New Morton Vil. Pool & Recreation Assn. v. Town Bd. of Town *944 of Oyster Bay (21 Misc 2d 987, 989), that a decision by a zoning board, which stated that a permit for a club in a residential area ‘ ‘ would destroy the rural, bucolic atmosphere of the subject premises and its immediate vicinity without regard to the present, existing and probable future development of the Town * * * and would not be in accordance with the present proposed comprehensive zoning plan for the entire town ’ ’, was reversed on the ground that the denial was arbitrary and unreasonable. It completely ignored the fact that the ordinance itself contemplated private clubs in B residential district.
Since the application at bar was under a so-called “ special permit ” provision of the ordinance, and the petitioner had amply demonstrated its intention and ability to comply with all the conditions imposed by the ordinance upon the granting of such a special permit, the board had no discretion except to grant the permit. The court concludes that the denial of the petitioner ’s application was arbitrary and unreasonable and that it should be annulled and set aside and the board directed to grant the permit applied for subject to appropriate conditions as specified in the ordinance.