694 A.2d 312

IN THE MATTER OF THE LIQUIDATION OF SUSSEX MUTUAL INSURANCE COMPANY.

Superior Court of New Jersey
Appellate Division

Argued May 5, 1997—Decided June 5, 1997.

Before Judges PETRELLA, LANDAU and WALLACE.

*Thomas M. Hunt,* Deputy Attorney General, argued the cause for appellant Commissioner of the New Jersey Department of Banking and Insurance as Liquidator of Sussex Mutual Insurance Company (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Hunt,* on the brief).

*Sean T. O'Neil* argued the cause for intervenor-appellant New Jersey Property Liability Insurance Guaranty Association (*Bressler, Amery & Ross,* attorneys; *Richard R. Spencer, Jr.* of counsel; *Mr. O'Neil* and *Cynthia J. Borrelli,* on the brief).

*Joseph K. Molloy,* of the New York Bar, admitted *pro hac vice,* argued the cause for respondents National Casualty Company and National Casualty Company of America, Ltd. (*Dwyer, Connell & Lisbona,* attorneys; *Donald T. Okner* and *Mr. Molloy,* of counsel and on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The Commissioner of Banking and Insurance, in the capacity of Liquidator of Sussex Mutual Insurance Company (Liquidator), appeals from the Chancery Division's determination that two insurance companies for which Sussex Mutual Insurance Company (Sussex Mutual), now in liquidation, acted as reinsurer, National Casualty Company and National Casualty Company of America, Ltd. (referred to collectively as National Casualty) qualified for the category of priority in liquidation set forth in *N.J.S.A.* 17:30C–26c(4). The Chancery Judge rejected the Liquidator's argument

that National Casualty fell within the residual category of "all other claims" under *N.J.S.A.* 17:30C–26c(5) (Class 5), rather than *N.J.S.A.* 17:30C–26c(4) (Class 4), which identifies "claims by policyholders, beneficiaries and insurers."

The statutory provision at issue in this case is part of the regulatory scheme governing the liquidation of Sussex Mutual. In general, the statute has been referred to as part of the Uniform Insurers Liquidation Act (UILA), *N.J.S.A.* 17:30C–1 through –31.[1] The Commissioner was appointed Liquidator of Sussex Mutual by the Chancery Judge on July 17, 1992, pursuant to the UILA. Under *N.J.S.A.* 17:30C–26, the Liquidator determined that National Casualty's claims for compensation as a reinsured of Sussex Mutual fell within the catch-all Class 5 priority category under *N.J.S.A.* 17:30C–26c(5). Apparently, there are insufficient funds available to the Liquidator to satisfy the Class 5 claims. Consequently, National Casualty objected to the Liquidator's assignment of its claim to Class 5, resulting in the Chancery Judge's order that National Casualty's claims should be classified as Class 4 claims under the statute. This appeal ensued.

Essentially, the Liquidator contends that the judge erred in overturning the administrative determination of Class 5 priority status for National Casualty because National Casualty is Sussex Mutual's reinsured. The Liquidator asserts that *N.J.S.A.* 17:30C–26c(4), enacted by *L.* 1979, *c.* 470, § 1, effective February 27, 1980, was erroneously transcribed into the statute books,[2] and should be read as "[c]laims by policyholders, beneficiaries and insureds." Additionally, the Liquidator claims that even if the word "insurer" was properly included in the statute National Casualty cannot

---

[1] Although this statute is referred to as the UILA, actually only parts of it are so identified (parts of sections 1, 4, and 5, and sections 15 through 23). *N.J.S.A.* 17:30C–23a. The priority provisions at issue in this case are similar to those found in the National Association of Insurance Commissioners Model Act.

[2] The Assembly Bill, A–1115 of 1978, which amended *N.J.S.A.* 17:30C–26c(4), contains the identical language. Hence, any alleged error was in the drafting of the bill, not its transcription from the adopted bill into the statute.

qualify for Class 4 priority because the traditional distinction between insurance and reinsurance demonstrates that the Legislature would not have granted reinsured insurance companies such priority status without explicitly stating so and that the term "insurer" cannot be read as equivalent to "reinsured." The New Jersey Property–Liability Insurance Guaranty Association (Guaranty Association)[3] has intervened as an appellant and joined in the Liquidator's arguments.

Sussex Mutual was a property and casualty insurer that eventually began acting as a reinsurer of other insurance companies. In 1989 the Liquidator determined that Sussex Mutual was insolvent and the company was placed into rehabilitation. Ultimately, a liquidation order was issued on July 17, 1992. Thereafter, proofs of claims were submitted to the Liquidator, including claims by National Casualty, which it characterized as those of a "general creditor" or "other claimants" without claiming policyholder protection. Those claims were originally filed as Class 5 claims, and it was noted that Sussex Mutual's assets were insufficient to pay any claims in that class.

As a result of the proceedings instituted by National Casualty in the Chancery Division the judge concluded that both the plain meaning and the legislative history of the 1979 amendments to *N.J.S.A.* 17:30C–26 by *L.* 1979, *c.* 470, indicated that the use of the word "insurers" in subsection c(4) was consistent with the legislative intent and that the term included insurers, such as National Casualty, who were reinsureds of the liquidated insurance company.

The Liquidator argues that the judge erred in overturning Class 5 claim priority for National Casualty because the Class 5 deter-

---

[3] The Guaranty Association was established pursuant to the New Jersey Property–Liability Insurance Guaranty Association Act, *N.J.S.A.* 17:30A–1 to –20. Its function includes protecting certain New Jersey resident policyholders and claimants of insolvent insurers. It also facilitates payment of any "covered claim," the definition of which expressly excludes amounts due any reinsurer or insurer. *N.J.S.A.* 17:30A–5d.

mination was based on the only reasonable interpretation of the UILA, and specifically of *N.J.S.A.* 17:30C–26c(4). The Liquidator relies heavily on what is perceived as a typographical error in the statute in the use of "insurers" instead of "insureds." The Guaranty Association joins in that argument and asserts that reversal of the Class 4 allocation to National Casualty is necessary because National Casualty's Class 4 status would result in harm to policy-holders and third party claimants—both covered and uncovered by the Guaranty Association's statutory scheme—and the sharing of limited funds with a reinsured in a way clearly unintended by the Legislature.

I.

Although the determination of an administrative agency is entitled to deference where agency expertise is involved, *see Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 92–93, 312 *A.*2d 497 (1973); *In re Aetna Casualty Surety Co.,* 248 *N.J.Super.* 367, 376, 591 *A.*2d 631 (App.Div.), *certif. denied,* 126 *N.J.* 385, 599 *A.*2d 162 (1991), *cert. denied,* 502 *U.S.* 1121, 112 *S.Ct.* 1244, 117 *L. Ed.*2d 476 (1992), an agency's interpretation with respect to a matter of statutory construction stands on a different footing. *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575, 384 *A.*2d 795 (1978); *Mayflower Securities Co. v. Bureau of Securities, supra,* 64 *N.J.* at 93, 312 *A.*2d 497.

*N.J.S.A.* 17:30C–26, captioned "Priority of claims for compensation," was amended by *L.* 1979, *c.* 470, § 1 (effective February 27, 1980) to add subsection c. Under the prior law (*L.* 1975, *c.* 113, § 26) the only priorities specified were those for administration expenses and employee compensation. Despite the claim of the Liquidator that the statute contains a technical error, our inquiry at oral argument indicated that to date no legislative initiative has been taken by the executive branch or the Legislature, including the Office of Legislative Services, to correct this supposed error. This provision was passed by the Legislature in 1979, and approved by the Governor in 1980. Moreover, the Department of

Banking and Insurance,[4] and presumably the Legislature, have had knowledge of the "error" at least since the date of National Casualty's objection to the assignment of its claims to Class 5, and certainly since the arguments on the cross-motions for summary judgment on May 24 and June 21, 1996. Nonetheless, no action has been taken to administratively or legislatively address the matter, the Liquidator pursuing the litigation route.

By virtue of the 1979 amendment the statute now provides five classes of priorities for distribution of a liquidated insurance company's assets:

> c. The priorities of distribution in a liquidation proceeding shall be in the following order:
>
> (1) Expenses of administration;
>
> (2) Compensation of employees as provided in subsection (a) of this section;
>
> (3) Claims for taxes and debts due to Federal or any state or local government which are secured by liens perfected prior to the commencement of delinquency proceedings;
>
> (4) Claims by policyholders, beneficiaries and *insurers* arising from and within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the company and liability claims against *insurers* which claims are within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the company and claims presented by the New Jersey Property–Liability Insurance Guaranty Association and claims presented by any similar organization in another state;
>
> (5) All other claims.
>
> [*N.J.S.A.* 17:30C–26(c) (emphasis added).]

Although the record is meager, as is the legislative history, a reading of subsection c(4) nonetheless leads to the conclusion that National Casualty does not qualify for Class 4 priority because its claim here is that of a reinsured. Whether subsection c(4) is read literally to include "insurers" or read liberally to include "insureds" only, the legislative history and caselaw applying the UILA lead to the inescapable conclusion that reinsureds were not intended to be given the same priority status as primary policyholders and direct insureds.

---

[4] As noted, the Liquidator is the Commissioner of the Department of Insurance (now the Department of Banking and Insurance).

## II.

The Chancery Judge in this case took the view that only legislative history demonstrating that a transcription error occurred would justify such judicial action. However, the question is whether National Casualty, a reinsured of Sussex Mutual, is entitled to Class 4 priority status, the same status afforded primary insureds and policyholders under *N.J.S.A.* 17:30C–26c(4). Determining whether National Casualty qualifies for Class 4 priority status requires examination of the textual construction of the provision, caselaw, legislation of other states, and legislative history.

### A.

Textual interpretation is the starting point in statutory construction as the internal sense of the text provides a fundamental guide to what the Legislature intended and indicates what it will be generally understood to have meant. *Sutherland Statutory Construction,* § 47.01 (5th ed.1992). Thus, it has been said, "Justice should not be the handmaiden of grammar." *Value Oil Co. v. Town of Irvington,* 152 *N.J.Super.* 354, 365, 377 *A.*2d 1225 (Law Div.1977), *aff'd,* 164 *N.J.Super.* 419, 396 *A.*2d 1149 (App.Div. 1978), *certif. denied,* 79 *N.J.* 501, 401 *A.*2d 256 (1979).

■ National Casualty's relationship to Sussex Mutual was as a reinsured, or ceding company.[5] Reinsurance spreads risks, and involves a contract in which one insurer (the reinsurer) agrees to indemnify another (the ceding company or reinsured, which cedes risks), for losses sustained under the latter's direct policies. *Ibid.*

■ When the literal impact of the text of a statute is inconsistent with the legislative meaning or leads to absurd results, a modification by the courts may be warranted. *State v. Costagliola,* 144 *N.J.Super.* 589, 598–599, 366 *A.*2d 738 (Cty.Ct.

---

[5] Reinsurance is discussed in *Francis v. United Jersey Bank,* 87 *N.J.* 15, 22, 432 *A.*2d 814 (1981). *See also N.J.S.A.* 17:51B–2.

1976); *Sutherland Statutory Construction, supra* (§ 46.07 at 126–127). The Legislature is presumed to act consonant with reason and good discretion, and statutes are to be read sensibly rather than literally. *Restaurant Enterprises, Inc. v. Sussex Mutual Insurance Co.,* 52 *N.J.* 73, 77, 243 *A.*2d 808 (1968); *Kotlikoff v. Tp. of Pennsauken,* 131 *N.J.Super.* 590, 595, 331 *A.*2d 42 (Law Div. 1974). Thus, where the plain language of a statute is cast into doubt by other evidence of intent, courts recognize the potential for "sheer inadvertence in the legislative process." *Zambardino v. Schweiker,* 668 *F.*2d 194, 199 (3d Cir.1981). *See also State v. Costagliola, supra,* 144 *N.J.Super.* at 599, 366 *A.*2d 738 ("Where the legislative intent is clear, it must be given effect regardless of inaccuracies of language."). While there are rare instances in which a court may substitute one word for another if necessary to carry out the legislative intent or express clearly manifested meaning, this has been considered "exceptional construction." *Sutherland Statutory Construction, supra* (§ 47.36 at 277–278).

As written, subsection c(4) applies to claims by "policyholders, beneficiaries, and insurers." A guide to legislative intent is found in the context of the words with which they are associated. *State v. Afanador,* 134 *N.J.* 162, 172, 631 *A.*2d 946 (1993). This is embodied in a maxim of legislative intent, *i.e., noscitur a sociis,* "known from its associates." *Ariston Airline & Catering Supply Co. v. Forbes,* 211 *N.J.Super.* 472, 480–481, 511 *A.*2d 1278 (Law Div.1986); *Sutherland Statutory Construction, supra* (§ 47.16). Significantly, in subsection c(4), "policyholders" and "beneficiaries" are both potential claimants identified by their relationship to the insolvent insurer. Assuming that "insurers" were also so identified, they can only be reinsurers of the insolvent company because c(4) expressly states that it applies to claims by insurers arising out of contracts of insurance with the insolvent insurer. While it is true that a reinsured is an insurer in the sense that it is also an insurance company, a reinsured's relationship with the insolvent insurer is one of an insured and is inconsistent with the plain meaning of subsection c(4).

Consequently, National Casualty's interpretation would mean that "insurers" are not identified by their relationship to the insolvent insurer, here Sussex Mutual, but are merely described as a class of entities known as insurers. As a matter of construction this appears to be a highly improbable result. National Casualty's relationship to Sussex Mutual is not that of "insurer," but of "reinsured." Hence, it is unlikely that insurers in the position of National Casualty (who are reinsureds) were intended to receive the priority accorded policyholders and beneficiaries merely because it is an insurance company, and regardless of its relationship to Sussex Mutual.

In like vein, subsection c(4) applies to claims "arising from ... insurance policies and insurance contracts issued by the company and liability claims against insurers ... and claims presented by [guaranty associations]." It is reasonable to assume that claims would arise from the insolvent company's insurance policies and contracts, and from liability claims against insureds of the company. In contrast, "liability claims against insurers" is meaningless in this context and makes no literal sense. Hence, the internal sense of c(4) suggests technical error in the use of insurers in both instances, and suggests that "insureds" was intended. However, we base our decision upon the legal authority supporting the proposition that reinsureds are not granted the same protection as direct insureds. We leave correction and/or clarification of the statute to the Legislature and refrain from any judicial "amendment" to the statute. *See Rollins Leasing v. Director of Taxation,* 279 *N.J.Super.* 540, 551, 653 *A.*2d 1131 (App.Div.1994) ("[A] court's function is not to rewrite legislation, and it should not attempt to do so simply because the legislation does not comport with the court's idea of how the statute should read."). New Jersey's 1947 Constitution allocates the writing of legislation to the Legislature, *N.J. Const.* art. IV, and interpretation of the laws to the Judiciary. *N.J. Const.* art. VI. *See also N.J. Const.* art. III (separation of powers). It is, of course, not for the courts to write or rewrite legislation. *See Rollins Leasing v. Director of Taxation, supra,* 279 *N.J.Super.* at 551, 653 *A.*2d 1131; *Space v.*

Division of Employment Security, Department of Labor, 60 *N.J.Super.* 380, 390, 159 *A.*2d 131 (App.Div.1960); *Henderson v. Celanese Corp.,* 30 *N.J.Super.* 353, 367, 104 *A.*2d 720 (App.Div. 1954), *overruled on other grounds by George v. Great Eastern Food Products,* 44 *N.J.* 44, 47, 207 *A.*2d 161 (1965).

### B.

Caselaw construing subsection c(4) is limited and not helpful. The only reported case found construing this subsection addressed the issue of whether surety bonds fell within the meaning of "insurance policies and insurance contracts." That phrase is not at issue here. *In re Integrity Insurance Co.,* 251 *N.J.Super.* 501, 598 *A.*2d 940 (Ch.Div.1991).

Although construing another, superseded statute, *Aetna Casualty and Surety Co. v. International Re–Insurance Corp.,* 117 *N.J. Eq.* 190, 175 *A.* 114 (Ch.1934), is helpful. There it was held that a reinsured could not be classified as an insured for purposes of gaining access to a fund set aside for policyholders of insolvent insurance companies. *Id.* at 192–193, 175 *A.* 114. *See also In re New Jersey Fidelity and Plate Glass Insurance Co.,* 15 *N.J. Misc.* 384, 191 *A.* 475 (Ch.1937). In construing the former statute *Aetna* explained that the fundamental differences between an ordinary primary contract of insurance and a contract of reinsurance led to the conclusion that a reinsured was not entitled to the same protection provided direct policyholders. *Aetna Casualty and Surety Co. v. International Re–Insurance Corp., supra,* 117 *N.J. Eq.* at 202–203, 175 *A.* 114. The general public was protected by giving priority to policyholders, whereas contracts of reinsurance, between insurance companies, did not demand the same protection. *Ibid.* National Casualty characterizes *Aetna* and *Fidelity* as outdated cases and asserts that they are not claiming "policyholder" status, the category identified under the earlier statute, and assert that they are "insurers" under the current statute. Nonetheless, National Casualty does not address the underlying distinction between direct insureds and reinsureds. *Aetna's* significance

is not in its explicit holding, admittedly superseded, but in the statement of policy expressed.

If the Legislature had intended to contravene the settled policy enunciated in *Aetna*, and favor reinsureds along with policyholders and beneficiaries, it would have used the term reinsured not the somewhat ambiguous term "insurers," which stands in stark contrast to the other terms "policyholders" and "beneficiaries." It is also unlikely that such a change would have been made without any indication of the Legislature's intent to make that change evident in pre-enactment history. "A statute should not be interpreted to change a longstanding rule or principle unless the statute manifests a clear intent to do so." *Deutch & Shur, P.C. v. Roth*, 284 *N.J.Super.* 133, 140, 663 *A.*2d 1373 (Law Div.1995). *See also Caldwell v. Rochelle Park*, 135 *N.J.Super.* 66, 74, 342 *A.*2d 583 (Law Div.1975) (presumption against legislative intent to alter existing law without clear indication).

Although *Aetna* is a 1934 decision, and there is little authority applying *Aetna* since enactment of the UILA, there is no authority contravening the policy announced in *Aetna*. National Casualty has not pointed to any contrary holding by any court in any jurisdiction, and only refers us to a passage from a treatise, Grayson S. Staring, *Law of Reinsurance* § 19:3[4] (1993). However, the passage referenced by National Casualty is not only unsupported by any cited authority, but the contrary principle is illustrated by the author with a citation to *Foremost Life Insurance Co. v. Dep't of Insurance*, 274 *Ind.* 181, 409 *N.E.*2d 1092, 1097 (1980), a case where the statute, in the counterpart clause to subsection c(4), uses the word "insure*ds*." Although for the most part the out-of-state cases relied on by the Liquidator deal with other statutes and priorities for "policyholders" or "insureds" or "benefits under policies and for losses incurred," not for "insurers," those cases are pertinent and persuasive because they demonstrate the wide-spread and longstanding policy of distinguishing direct insureds from reinsureds for the purpose of determining priorities of claims against insolvent insurance companies.

Courts in other states have recognized the same established policy to protect direct insureds, and noted that legislation intended to depart from that policy would be likely to refer to reinsurance agreements explicitly. Thus, in *In re Liquidations of Reserve Insurance Co.*, 122 *Ill.*2d 555, 120 *Ill.Dec.* 508, 509–510, 524 *N.E.*2d 538, 539–540 (1988), the Court considered whether a priority class defined as "[c]laims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the company," included claims of reinsured parties, and concluded that it did not. The Court noted there was an essential distinction between the interests in a reinsurance agreement and those in a direct insurance agreement and concluded that if the Legislature had intended to include reinsurance agreements in the same priority category as direct insureds it would have expressly so stated. *Id.* at 511, 524 *N.E.*2d at 541. *See also Foremost Life Insurance Co. v. Dep't of Insurance, supra*, 409 *N.E.*2d at 1097 (Legislature could have given express priority to ceding companies along with policyholders, beneficiaries and insureds, and to reinsurance contracts along with insurance contracts, had that been intended); *Neff v. Cherokee Insurance Co.*, 704 *S.W.*2d 1, 7 (Tenn.1986) (reinsurance contracts not accorded statutory priority given to insurance policies, where direct insurance, but not reinsurance, is traditionally protected, and contrary legislative statement or implication was absent).

## C.

The Liquidator points to eleven other states or territories that have established a priority class for policyholders and insureds similar to that in subsection c(4), as the Liquidator urges it should be read, (Delaware, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, New Hampshire, Oklahoma, Puerto Rico, Rhode Island, and Wyoming), and eight states that have liquidation priority schemes with language substantially similar to New Jersey's (Delaware, Illinois, Kentucky, Louisiana, Massachusetts, New

Hampshire, Texas and Wyoming). Several states have statutes with wording nearly identical to subsection c(4) (*e.g.,* Delaware, Kentucky, Louisiana, Massachusetts, and Rhode Island), and at least six jurisdictions use the phrase "policyholders, beneficiaries and insureds" in the same context.[6] Our research indicates that, except for the statute in question, no other jurisdiction gives priority to "policyholders, beneficiaries and insure*rs*." Apparently, no jurisdiction expressly gives priority to claims of a reinsured, or a ceding company; neither we, nor the parties have found any. Although Massachusetts initially referred to "policyholders, beneficiaries and insure*rs*" in this context, in 1989 it amended the law without comment to change "insurers" to "insureds." 1989 *Mass. Acts* 237.

## D.

The Chancery Judge relied on the absence from the available legislative history of any evidence that subsection c(4) was inaccurately transcribed. Other evidence, however, does indicate that "insureds" was intended instead of "insurers."

On February 13, 1980, a Deputy Attorney General sent to an Assistant Governor's Counsel a memorandum describing three insurance bills awaiting the Governor's signature, including A–1115 of 1978. The priority for payment of claims in A–1115 was characterized as "similar to the priority of distribution set forth in the N.A.I.C. [National Association of Insurance Commissioners] Model Act." In the N.A.I.C. Model Act, Class 3 corresponds to Class 4 in issue here. However, it uses different language, referring to "claims under policies for losses incurred," rather than claims of policyholders or insureds.

---

[6] *Del.Code Ann.* tit. 18, § 5918(e) (1996); *Ky.Rev.Stat. Ann.* § 304.33–430(2) (Mitchie 1996); *La.Rev.Stat. Ann.* tit. 22, § 746(2) (West 1996); *Md.Code Ann., Insurance* § 9–227(c)(1); *Mass. Gen. Laws Ann.* Ch. 175, § 180F(4) (West 1996); *R.I. Gen. Laws* § 27–14.4–22(4) (1996).

The Deputy also stated, "[T]his priority of distribution is in line with the priority usually followed as a practical matter," indicating that the bill was understood to clarify, rather than alter, existing practice.  An executive office inter-communication to then Governor Brendan Byrne from his counsel summarized the provisions of A–1115 of 1978, the bill to amend *N.J.S.A.* 17:30C–26, then awaiting signature of the Governor.[7]  The memo, dated February 20, 1980, described the Class 4 priority as "claims by insureds and by the New Jersey Property–Liability Insurance Guaranty Association and similar organizations in other states."  During the pendency of the bill, claims of the Guaranty Association were consolidated into Class 4, eliminating a separate Class 5, and renumbering the sixth class to what is now subsection c(5).  After the Governor signed the bill, the identical summary appeared in a February 27, 1980 press release.  Records of the Governor who approved a bill constitute legislative history that may aid in interpreting legislative intent.  *State v. Madden,* 61 *N.J.* 377, 387–389, 294 *A.2d* 609 (1972).  *See also Caldwell v. Rochelle Park, supra,* 135 *N.J.Super.* at 74, 342 *A.2d* 583.  Although the Department of Insurance had indicated in a comment on pending legislation dated June 25, 1979, that it was in agreement with the bill, there is nothing to suggest that the Department did not overlook the two instances where "insurers" appeared instead of "insureds."  The legislative history does not support National Casualty's position.

### III.

In sum, the absence of any support in caselaw or legislative history for National Casualty's interpretation of subsection c(4), along with the infeasibility of its literal use of "insurers," leads to the conclusion that the Liquidator properly consigned National Casualty to Class 5 priority status.  National Casualty was not an

---

[7] A–1115 of 1978 became *L.* 1979, *c.* 470, § 1, when approved on February 27, 1980.

"insurer" in relation to Sussex Mutual. Moreover, it was not an "insured" either, but a "reinsured" as recognized in *Aetna, supra,* 117 *N.J. Eq.* at 202–203, 175 *A.* 114. Therefore, National Casualty's alternative argument must also fail. The Liquidator did not err in conforming to established principles that dictate denying to reinsureds the statutory priority accorded direct insureds. As noted above, courts in this jurisdiction and others have consistently rejected the notion that reinsureds enjoy the same status accorded "insureds" in liquidation proceedings under the UILA. 19A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 10726 (Supp.1996–97) ("Claims arising out of reinsurance are considered separate from and subordinate to claims of policyholders.").

Reversed.