**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

**JAGUAR LAND ROVER NORTH AMERICA,**

        Plaintiff,

v.

**DIRECTOR, DIVISION OF TAXATION AND THE TOWNSHIP OF MAHWAH,**

        Defendants.

TAX COURT OF NEW JERSEY
DOCKET NO.: 014046-2018

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: July 29, 2022

Joseph E. Bock for plaintiff (Spiotti & Associates, P.C., attorneys).

Anthony D. Tancini for defendant Director, Division of Taxation (Matthew J. Platkin, Acting Attorney General of New Jersey, attorney).

Nylema Nabbie for defendant Township of Mahwah (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys).

BIANCO, J.T.C.

This is the court's formal opinion concerning the Statewide Non-residential Development Fee Act (Statute), N.J.S.A. 40:55D-8.1 to -8.7. The novel issue presented is one of statutory construction, i.e., whether pursuant to the Statute, an urban transit hub must be specifically delineated by the New Jersey Economic Development Authority (NJEDA) in addition to being located within a one-half mile radius surrounding the mid point[1] of a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans-Hudson Corporation rail station platform area. For the reasons stated more fully below, the court finds that the Statute is unambiguous, and pursuant to its plain meaning, an urban transit hub must be specifically

---

[1] N.J.S.A. 34:1B-208 (Section 208), discussed at length below, omits the customary hyphen between mid and point. For consistency, this opinion does the same.

delineated *and* be located within a one-half mile radius surrounding the mid point of a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans-Hudson Corporation rail station platform area.

### Facts

Plaintiff taxpayer Jaguar Land Rover North America, LLC (Jaguar) contests defendant Township of Mahwah's (Township or Mahwah) assessment of a non-residential development fee against their new 144,000 square feet corporate headquarters located at 100 Jaguar Land Rover Way, Mahwah (Subject Property). Pursuant to the Statute, on July 12, 2017, the Township imposed an assessment of 2.5% of the equalized assessed value of the additions to existing structures on the Subject Property that were to be used for non-residential purposes; the fee was $75,572. On July 21, 2017, Jaguar wrote to the Township's Tax Assessor (Assessor) asking for confirmation that Jaguar was exempt from the non-residential development fee. Jaguar claimed that because Mahwah is situated within a one-half mile radius from a New Jersey Transit Rail Station platform,[2] Jaguar is exempt from the fee. Jaguar informed the Township that once the exemption was confirmed, Jaguar would submit its official exemption request on Form N-RDF, pursuant to the Statute.

On August 21, 2017, the Township informed Jaguar that while the Subject Property is within one-half mile of the New Jersey Transit Rail Station Platform, in Suffern, New York, Mahwah is not a specifically enumerated eligible municipality and therefore, Jaguar does not satisfy the Statute's exemption requirements. Jaguar replied in a letter dated September 13, 2017,

---

[2] The New Jersey Transit Rail Station platform Jaguar relies on is the Suffern Station in Suffern, New York. The Township and Suffern Station are separated by the Ramapo River. It is uncontested that the Subject Property is within a one-half mile radius from Suffern Station. See infra n. 8 for further discussion on the relationship between Suffern Station and the Subject Property.

claiming that their only disagreement with the Township is whether Mahwah qualifies as an urban transit hub based on its proximity to the New Jersey Transit Rail Station in Suffern, New York.

On June 28, 2018, Jaguar paid the fee under protest. In a letter of the same date, Jaguar cited a June 20, 2018, conference call between the Assessor, the Township, and Jaguar, in which the Township advised Jaguar that a final Certificate of Occupancy would not be issued until the Township was in receipt of the fee. Jaguar then appealed the Township's denial of the fee exemption to the Director, Division of Taxation (Director) by letter dated August 6, 2018.

The Director denied the appeal on September 24, 2018, explaining that under the statutory definition, it is not sufficient that a property be located within one-half mile radius of a train station from one of the named transit corporations. Rather, the area must be one that the NJEDA named as an urban transit hub under the authority granted by N.J.S.A. 34:1B-209(e)(1). Jaguar timely appealed the Director's determination to this court on December 24, 2018. In its complaint, Jaguar concedes that to satisfy the qualifications of the exemption, the property must also meet the definition of an urban transit hub as defined by the Executive Director of the NJEDA, in consultation with the Director. However, Jaguar argues that to hold that an exempt property must be within one-half mile of a rail station *and* be located within a specifically NJEDA delineated urban transit hub is duplicative, incongruent, and contravenes the plain language of the Statute.

On November 11, 2021, the Township moved for summary judgment against Jaguar arguing that the Township has no discretion in its assessment of the fee and that Jaguar is not entitled to an exemption because the Subject Property is not located within a specifically delineated urban transit hub. On January 14, 2022, the Director filed a concurrent motion for summary judgment against Jaguar arguing that akin to tax exemptions, exemptions to the Statute ought to be narrowly construed, and Jaguar is ineligible for an exemption under the Statute because

3

Mahwah is not a specifically designated urban transit hub.  On February 23, 2022, Jaguar opposed both concurrent motions and filed its own cross-motion for summary judgment alleging that on its face the Statute is clear and unambiguous: to be exempt from the fee, the Subject Property need only be within one-half mile radius of a New Jersey Transit rail station.  It is undisputed that Mahwah is not a specifically delineated urban transit hub by the NJEDA.[3]

## Applicable Law

A motion for summary judgment should be granted in the absence of genuine issues of material facts.  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law").  Denial is appropriate only where the evidence is such that reasonable minds could return a finding favorable to the party opposing the motion.  Id. at 540.

"As a general rule of statutory construction, [courts] look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, [the court] need delve no deeper than the act's literal terms to divine the Legislature's intent."  State v. Butler, 89 N.J. 220, 226 (1982).  "The Legislature is presumed to act consonant with reason and good discretion, and statutes are to be read sensibly rather than literally."  Matter of Liquidation of

---

[3] "Once the urban transit hubs have been delineated, the [NJEDA] . . . will post eligible rail stations and corresponding midpoints on the website at www.newjerseybusiness.gov.  The posting will be updated if the eligible rail stations change and to reflect changes in station midpoints."  N.J.A.C. 19:31-9.2.  At the time of this writing, the NJEDA's website is www.njeda.com.  While the Urban Transit Hub Tax Credit Program is inactive, the website contains information listing nine municipalities specifically delineated as containing urban transit hubs: Camden, East Orange, Elizabeth, Hoboken, Jersey City, Newark, New Brunswick, Paterson, and Trenton.  See Urban Transit Hub Tax Credit Program, NJEDA, https://www.njeda.com/urban-transit-hub-tax-credit-program/ (last visited July 29, 2022).

Sussex Mut. Ins. Co., 301 N.J. Super. 595, 603 (App. Div. 1997). "[Courts] are encouraged, when construing the words of a statute, to 'read and examine the text of the act and draw inferences concerning the meaning from its composition and structure.'" State v. Smith, 197 N.J. 325, 333 (2009) (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 47:1 (7th ed. 2007)). "Additionally, words alone do not control; rather it is the internal sense of the law which controls . . . Isolated expressions cannot be invoked to defeat a reasonable construction." Loboda v. Clark, 40 N.J. 424, 435 (1963). "[J]ustice should not be the handmaiden of grammar." Value Oil Co. v. Town of Irvington, 152 N.J. Super. 354, 365 (Law Div. 1977), aff'd, 164 N.J. Super 419 (App. Div. 1978)., certif. denied, 79 N.J. 501 (1979). In other words, the court cannot use grammatical rules to contravene justice.

"[T]he Director's construction of the operative law, which is not plainly unreasonable and with which the Legislature has not interfered, is entitled to prevail." Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327 (1984)). However, "courts remain the final authorities on issues of statutory construction [and have no obligation to summarily approve] the administrative interpretation." N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 547 (1978) (citation and internal quotation marks omitted).

**Analysis**

The determination of this case hinges solely upon statutory construction unmoored from any genuine dispute of material facts; this matter is ripe for summary judgment as the dispute is purely a matter of law. See R. 4:46-2(c).

Whether through a lack of understanding or a lack of precise articulation, the parties have muddled the requirements of the Statute. The Statute requires both that an urban transit hub be

5

specifically delineated, *and* the property must be located within a one-half mile radius surrounding the mid point of a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans-Hudson Corporation rail station platform area. The Statute cites N.J.S.A. 34:1B-208 (Section 208) titled "Definitions relative to the 'Urban Transit Hub Tax Credit Act,'" to define an urban transit hub. While the Urban Transit Hub Tax Credit Act of 2006, N.J.S.A. 34:1B-207 to -209.4 (Tax Credit Act) was phased out by the New Jersey Economic Opportunity Act of 2013, L. 2013, c. 161,[4] the court finds the Tax Credit Act's definitional statutes useful in interpreting the language of the Statute. The court does not engage in a disjunctive reading of various elements, but a holistic interpretation bound by the Statute's plain meaning.

The Statute imposes "a fee . . . on all construction resulting in non-residential development. . . ." N.J.S.A. 40:55D-8.4(a). The Statute provides several exemptions from the non-residential development fee; at issue is "projects that are located within a specifically delineated urban transit hub. . . ." N.J.S.A. 40:55D-8.4(b)(4). The Urban Transit Hub Tax Credit Act of 2006 explicitly states that:

> [t]he Executive Director of the New Jersey Commerce Commission, in consultation with the Director of the Division of Taxation in the Department of the Treasury, shall adopt rules in accordance with the "Administrative Procedure Act," as are necessary to implement this act, including but not limited to: . . . specific delineation of urban transit hubs . . . .
>
> [N.J.S.A.34:1B-209(e)(1).]

In defining urban transit hub, Section 208 has three lettered subsections followed by two free-floating sentences:

> "Urban transit hub" means:
>
> a.

---

[4]  This law is codified as amended in scattered sections of Titles 34 and 52 of the New Jersey Statutes.

(1) property located within a ½ -mile radius surrounding the mid point of a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans-Hudson Corporation rail station platform area, including all light rail stations, and

(2) property located within a one-mile radius of the mid point of the platform area of such a rail station if the property is in a qualified municipality under the "Municipal Rehabilitation and Economic Recovery Act," P.L. 2002, c.43 (C.52:27BBB-1 et seq.) or in an area that is the subject of a Choice Neighborhoods Transformation Plan funded by the federal Department of Housing and Urban Development, and

(3) the site of the campus of an acute care medical facility located within a one-mile radius of the mid point of the platform area of such a rail station, and

(4) the site of a closed hospital located within a one-mile radius of the mid point of the platform area of such a rail station;

b. property located within a ½-mile radius surround the mid point of one of up to two underground light rail stations' platform areas that are most proximate to an interstate rail station;

c. property adjacent to, or connected by rail spur to, a freight rail line if the business utilizes that freight line at any rail spur located adjacent to or within a one-mile radius surrounding the entrance to the property for loading and unloading freight cars on trains;

which property shall have been specifically delineated by the authority pursuant to subsection e. of section 3 of P.L.2007, c. 346 (C.34:1B-209).

A property which is partially included within the radius shall only be considered part of the urban transit hub if over 50 percent of its land area falls within the radius.

[N.J.S.A. 34:1B-208.]

Jaguar argues that because each subsection ends with a semicolon, the free-floating

sentence immediately succeeding "unloading freight cars on trains;" of section c., grammatically

7

can only apply to subsection c. Thus, Jaguar submits that subsection (a)(1), reading "property located within a ½-mile radius surrounding the mid point of a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans-Hudson Corporation rail station platform area, including all light rail stations, and" is a complete definition for urban transit hub.

Adopting this construction would limit the statutorily mandated "specific delineation" to subsection c, which reads "property adjacent to, or connected by rail spur to, a freight rail line if the business utilizes that freight line at any rail spur located adjacent to or within a one-mile radius surrounding the entrance to the property for loading and unloading freight cars on trains; . . . ." The court finds Jaguar's interpretation of subsection (a)(1) of Section 208 to be unpersuasive, and contrary to New Jersey jurisprudence on statutory interpretation.

The different sets of criteria for urban transit hubs within the subsections are separated by semicolons.[5] Thus, the definition of urban transit hub is one long sentence beginning with "Urban transit hub means:" and ending with the free-floating clause requiring "which property shall have been specifically delineated . . . ." N.J.S.A. 34:1B-208. It is clear to this court that because the free-floating clause applies to each subsection of the definition an urban transit hub must be specifically delineated *and* meet the proximity requirements to a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans-Hudson Corporation rail station platform area.

---

[5] Authors must "[u]se semicolons instead of commas to separate items in a series if any of the items contains an internal comma or if semicolons would make the sentence clearer." Bryan A. Garner, The Redbook: A Manual on Legal Style 14 (Jeff Newman et al. eds., 3rd ed. 2013). A semicolon's "pause is more pronounced than a comma would deliver, though of course it still does not have the punch of a period." Id. at 13. Here, Section 208 lists several sets of criteria for urban transit hub eligibility separated by semicolons, thus each subsection of the definition comprises a single sentence which is subject to the free-floating clause requiring specific delineation.

Additionally, N.J.S.A. 34:1B-208(a)(1), (a)(2), (b), and (c) all begin with "property located within" or "property adjacent to." The free-floating clause at the end of Section 208 begins with "which property shall have been specifically delineated . . . ." Ibid. Finding that the free-floating clause only applies to subsection c would beget more confusion than clarity. It would not make sense to find that subsection c's property shall have been specifically delineated but the property of the other subsections is unaffected by subsequent language. See Matter of Liquidation of Sussex Mut. Ins. Co., 301 N.J. Super. at 603 ("The Legislature is presumed to act consonant with reason and good discretion, and statutes are to be read sensibly rather than literally."). The sensible interpretation here, and the plain reading of Section 208 requires that the free-floating clause apply to all the property mentioned under the urban transit hub definition.

Section 208's definition of urban transit hub is reiterated in regulations, but rather than enumerating potential variations of hubs in sections and subsections, the entirety of the definition is contained within one solid paragraph. See N.J.A.C. 19:31-9.2. The regulations taking such a form is instructive. The court need not, as the Director suggests, speculate as to what the Legislature could have achieved if they put everything in the same paragraph. Nor must the court endorse Jaguar's overly narrow and unreasonable interpretation of the free-floating clause only applying to subsection c. In one paragraph, the regulation spells out the various forms an urban transit hub can take, then without indenting explains that "[o]nce the hubs have been delineated, the Authority will post eligible rail stations . . . on [their] website . . . ." Ibid.

The regulations also explain how the NJEDA will maintain lists of specifically enumerated eligible municipalities. "For the State fiscal year 2008, the eligible municipalities are: Camden East Orange, Elizabeth, Jersey City, Newark, New Brunswick, Paterson, Trenton and Hoboken." N.J.A.C. 19:31-9.2. Notice of eligible municipalities is to be annually published on the NJEDA's

9

website. The website in turn states that "Urban Transit Hubs are located within ½ mile of New Jersey Transit, PATH, PATCO, or light rail stations in Camden (expanded to one mile), East Orange, Elizabeth, Hoboken, Jersey City, Newark, New Brunswick, Paterson, and Trenton." Urban Transit Hub Tax Credit Program, NJEDA, https;//www.njeda.com/urban-transit-hub-tax-credit-program/ (last visited July 25, 2022). While the website uses the same list of municipalities containing urban transit hubs as the list of eligible municipalities, this court is not persuaded that urban transit hubs may only exist in these nine municipalities. The court observes that eligible municipalities are specifically defined within the regulations and Section 208.[6] Moreover, that list does not supersede the clear definition imposed by the plain language of the Statute.

The Legislature's use of a semicolon at the end of subsection c in Section 208 suspends the subsection and begins the new clause, which applies to all previous subsections. This interpretation is bolstered by the fact that the regulation has substantially the same words as Section 208 and is formatted as an uninterrupted paragraph rather than an indented and differentiated lettered list followed by free-floating sentences. See N.J.S.A. 34:1B-208; N.J.A.C. 19:31-9.2. Accordingly, the court finds that the plain language of the Statute is unambiguous and dictates that an urban transit hub pursuant to N.J.S.A. 34:1B-208 is such property within one-half mile radius surrounding the mid point of a New Jersey Transit Corporation, Port Authority Transit Corporation

---

[6] The statute defines the term 'Eligible municipality' as

> a municipality: (1) which qualifies for State aid pursuant to P.L. 1978, c.14 (C.52:27D-178 et seq.) or which was continued to be a qualified municipality there under pursuant to P.L.2007, c.111; and (2) in which 30 percent or more of the value of real property was exempt from local property taxation during tax year 2006. The percentage of exempt property shall be calculated by dividing the total exempt value by the sum of the net valuation which is taxable and that which is tax exempt.
> [N.J.S.A. 34:1B-208.]

or Port Authority Transit Hudson Corporation rail station platform area that has also been specifically delineated by the NJEDA. While the Subject Property is within a one-half mile radius of Suffern Station, it has not been specifically delineated by the NJEDA and thus cannot be an urban transit hub exempt from the fee.

**The Form N-RDF**

Jaguar failed to comply with the Statute by not filing a Form N-RDF (Form) with its initial application for exemption. The Township and the Director argue that Jaguar is unable to challenge its exemption denial as a matter of law because it did not file the Form. The Township states that it is prejudiced by Jaguar's failure to submit the Form. This argument is without merit. While the Statute does discuss a process for requesting an exemption, the court's focus is on the purpose of the Form. See N.J.S.A. 40:55D-8.4(c)(1) ("developers shall pay non-residential development fees . . . in a manner and on such forms as required by the Treasurer").

Upon inspection of the Form[7], it is clear that it was generated by the Director to assist and guide municipal tax assessors in complying with the Statute. The Form is composed of two main sections: one to be filled out by the developer and one by the assessor. The developer provides identifying information about the property and checks a box indicating the basis of their purported exemption from the fee. If the assessor agrees with the developer's claim and finds the exemption justified, the assessor check the corresponding box. Otherwise, the assessor calculates the fee and supply their estimated and finalized values for their calculation, along with the final fee amount. Finally, there is a portion to be filled out by the municipality that confirms receipt of the payment.

---

[7] Form N-RDF is available at https://www.state.nj.us/treasury/taxation/pdf/other_forms/lpt/n-rdf.pdf (last visited July 29, 2022).

11

The Form is another iteration of a distillation of the requirements of the Statute. It consolidates the necessary information for an exemption and fee determination pursuant to the Statute.

Here, while the Director and the Township claim that they are prejudiced by Jaguar's failure to submit the Form, because of copious letters exchanged between the parties confirming and memorializing the relevant facts and positions, at no point has either defendant been lacking information resulting from the missing Form. However, "words alone do not control; rather it is the internal sense of the law which controls." Loboda, 40 N.J. at 435. Tucked deep into the hierarchal structure of the Statute, it states "developers shall pay non-residential development fees . . . in a manner and on such forms as required by the Treasurer . . . ." N.J.S.A. 40:55D-8.4(c)(1).

The Form is intended to facilitate the exemption process and ensure that the relevant information is passed along to the appropriate parties. Here, Jaguar's many correspondences with the Assessor, the Township, and the Director ensured that each party was well advised as to the information necessary to make informed decisions in accordance with the Statute. Furthermore, as Jaguar pointed out, at the outset it offered to submit the Form once a consensus was reached between itself and the Township and the Statute does not provide a filing deadline. Additionally, Jaguar already paid the redevelopment fee under protest further undercutting defendants' claims of prejudice. The missing Form does not preclude Jaguar from seeking review, however pursuant to the plain meaning of the Statute Jaguar is not exempt from the fee because the Subject Property is not a project located within an urban transit hub specifically delineated by the NJEDA.

## Legislative Intent

Because this court finds that the Statute is clear and unambiguous on its face, there need be no attempt to divine meaning from any collateral sources when interpreting the Statute. See

12

Ryan v. Renny, 203 N.J. 37, 54 (2010) (explaining that "[g]enerally, the best indicator of [legislative] intent is the statutory language itself."); Koch v. Dir., Div. of Taxation, 157 N.J. 1, 7 (1999) ("It is well established that in construing a statute, one must first consider its plain language."); State v. Butler, 89 N.J. 220, 226 (1982) ("If the statute is clear and unambiguous on its face and admits of only one interpretation, [courts] need delve no deeper than the act's literal terms to divine the Legislature's intent."). The Township argues that even if this court were to find that an urban transit hub need not be specifically delineated, the clear legislative intent is to limit the non-residential development fee exemption to urban areas. See N.J.S.A. 40:55D-8.2(b) ("In order to balance the needs of developing and redeveloping communities, a reasonable method of providing for the housing needs of low and moderate income and middle income [sic] households, without mandating the inclusion of housing in every non-residential project, must be established.").

The Township and the Director further argued that because Suffern Station is separated from Mahwah by a river, the travel distance between the two points is greater than the requisite half mile, thus granting Jaguar the exemption would frustrate the Legislature's intention of facilitating public transportation in urban communities.[8] The court need not consider the proposed bills and other indicators of legislative intent the Township and the Director allude to. See Hennefeld v. Twp. of Montclair, 22 N.J. Tax 166, 201 (Tax 2005) ("The Supreme Court has held that '[p]ending legislation . . . is of little value in determining legislative intent.'") (quoting Koch, 157 N.J. at 13); Hammock by Hammock v. Hoffmann-LaRoche, 142 N.J. 356, 378 (1995) (placing little value on standard proposed by legislation "not enacted into law"). Because this court finds

---

[8] Upon the court's inquiry at oral argument, the parties agreed that Section 208's use of the word radius clearly limits the scope to actual distance rather than necessary travel distance. See N.J.S.A. 34:1B-208(a)(1) ("property located within a ½ -mile radius").

that the plain language of Section 208 requires both the Subject Property to be located within one-half mile radius of a transit rail *and* be specifically delineated as an urban transit hub the court need look no further than the face of the Statute.

## Conclusion

This court finds the Statute to be clear and unambiguous on its face and admits only the interpretation requiring that the property be located within a ½-mile radius surrounding the mid-point of a New Jersey Transit Corporation, Port Authority Transit Corporation or Port Authority Trans Hudson Corporation rail station platform *and* be specifically delineated by the NJEDA. It is undisputed that the Subject Property is not a project located within an NJEDA specifically delineated urban transit hub. Thus, Jaguar cannot be an urban transit hub exempt from the non-residential development fee. Accordingly, the Township's motion for summary judgment and the Director's concurrent motion for summary judgment are GRANTED, and Jaguar's cross-motion for summary judgment is DENIED. The Tax Court's judgment consistent with this opinion will be uploaded to *eCourts*.